HENRY S. TERHUNE *vs.* ASA S. COLTON, wife, and others.

The general rule of law in reference to the appropriation of payments is, that a debtor owing several debts to the same creditor has a right to apply his payment, at the time of making it, to which debt he pleases. If he makes a general payment without appropriating it, the creditor may apply it as he pleases. And where neither party appropriates it, the law will apply it according to its own view of the intrinsic justice and equity of the case.

The appropriation by the debtor may be shown not only by his express declaration, but by any circumstances from which his intention can be inferred; but such intention must be signified to the creditor in some way. A private entry, made by the debtor in his own books of account, is insufficient to determine the application of the payment.

Terhune *v.* Colton.

If neither party makes an appropriation of the payments, and equities attach
   in favor of a third party, it is not in the power of either debtor or creditor,
   at a subsequent period, to make an appropriation affecting the equities of
   such third party.

Where a general payment is made without application by either party, and
   there are divers claims, some of which are but imperfectly secured, the
   court will apply it to those debts for which the security is most precarious.

*R. S. Field* and *W. L. Dayton,* for exceptions.

*C. Parker* and *A. O. Zabriskie,* contra.

THE CHANCELLOR. Four exceptions have been taken
to the master's report, which I will notice in their order.

*First exception.* This exception is not well taken. I
think the master was right in not deducting from the
amount due to the said William Schenck, upon the said
decree, the sum of $607.43, charged upon the books
of John C. Schenck against William Schenck, prior to
the 1st day of April, 1839; and that he was correct,
also, in not deducting the sum of $904.82, charged upon
the books of John C. Schenck subsequent to the said 1st
day of April, 1839.

In determining the rights of these parties, it is very
important that we should ascertain the precise position
which Henry S. Terhune, the complainant, occupies in
relation to the decree which has given rise to this contro-
versy. The decree bears date the 11th of February, 1837,
by which it was decreed there was due to Asa S. Colton
the sum of $1724.38, to William Schenck $1724.38, to
Caleb Johnson $4904, to Enoch Johnson $2697.20, to
Caleb Johnson $2441, and to Isaac Story, executor,
$2642.06. By an agreement made between the parties to
this decree, it was agreed that the moneys so decreed to
be due to the Johnsons should have priority of payment,
and be first satisfied out of the mortgaged premises. The
mortgaged premises were not, however, sold under the
decree. Isaac Story, the assignee of John C. Schenck, to
whom Schenck had made a general assignment for the

*U

benefit of his creditors, advertised and sold the mortgaged premises under the assignment to one John Gulick, for the sum of $67, subject to encumbrances. Gulick purchased for the benefit of Schenck, who hoped to make such an arrangement of his debts as would enable him to take a conveyance of his property. On the same day that Gulick purchased, which was the 30th of March, 1837, a mortgage was executed by John Gulick to James Bishop on the premises now in dispute, and which was the same land covered by the decree to secure the payment of five thousand nine hundred and sixty-nine dollars and forty-six cents. With the money obtained on the Bishop mortgage, which money was advanced by Bishop, together with other moneys raised by Gulick, the whole amount of principal and interest due to the Johnsons on the decree was paid, together with the costs of the suit and the execution fees. The solicitor of the Johnsons gave to the sheriff a receipt for $10,203.99, the amount due them; and on the 22d September, 1837, the solicitor of Colton and wife and William Schenck entered in the sheriff's docket an order for a stay of further proceedings on the decree until further orders. The allegation in the bill of complaint is, that at that time the decree was understood, by all parties to it, to be satisfied, and that James Bishop advanced his money with that understanding. No doubt it is true that Bishop did advance his money with that understanding, and that he supposed the mortgage he took was the first encumbrance upon the mortgaged premises. It was, however, decided by this court, and the report of the master is the result of the reference upon that decision, that the decree was not satisfied, so far as the Coltons' and William Schenck's claims were concerned, and that they were entitled to have the amounts due them, respectively, raised upon that decree, after deducting such payment as had been made upon their claims since the date of the decree. The reference was made to the master to ascertain such

payments, and the amount of those payments is the only matter now in dispute between the parties. We are now endeavoring to ascertain the particular position occupied by the complainant in reference to the decree, that his equities, whatever they are in reference to these payments, may be protected. We will see, by looking one step further into the case, that the complainant is entitled to the equities which would have enured to the James Bishop mortgage, if that were now in existence.

In 1839, John Gulick, then holding the equity of redemption in the mortgaged premises, conveyed it to John C. Schenck, and thereupon Bishop agreed that the bond and mortgage of John C. Schenck should be substituted in place of the bond and mortgage executed to him by John Gulick, as before mentioned; and accordingly, on the 28th of June, 1839, John C. Schenck substituted his bond and mortgage for $6000 for the bond and mortgage of Gulick to Schenck. The complainant holds under the $6000 mortgage. It will thus be seen that Terhune, the complainant, holding under the $6000 mortgage, which was substituted for the John Gulick mortgage, is entitled, upon taking an account of the payments upon that decree, to the same equities that he might claim if he now held in his hands the John Gulick mortgage, or, in other words, in taking the account, the equities are to be adjudicated between the Coltons and William Schenck, on one side, and the complainant on the other, viewing the complainant in the light of a second encumbrancer upon the premises from the 30th of March, 1837. The equities existing between two encumbrancers upon the same premises are very different from those between an encumbrancer and a stranger, who, acquiring an encumbrance, claims some equity arising out of transactions occurring before he acquired his lien. So the equities existing between John C. Schenck, on one side, and the Coltons and William Schenck, on the other, are subject to very different rules and regulations from those that are to govern

in adjusting the equities arising out of the same facts and transactions between the complainant and the defendants. This will be seen in the further examination of the first exception.

On the 7th of August, 1837, John C. Schenck was indebted to William Schenck—first, in the amount secured by this decree, which, on the 6th of February, 1837, (the date of the decree) was $1724.38; second, on a bond, secured by a mortgage on other property than that embraced in the decree, in the sum of $3283.40. From that time up to the first day of April, 1839, John C. Schenck advanced to William Schenck cash from time to time, paid sundry expenses for him, and furnished him with board and lodging. They were made the subjects of regular charges in the book of account of John C. Schenck, and on the first of April, 1839, amounted to $607.43. This sum the master refused to appropriate to the debt secured by the decree, but applied it to the mortgage debt of $3283.40.

It appears, from a paper made an exhibit in the cause, which is in the handwriting of John C. Schenck, that on that day there was a settlement between him and William Schenck, in which settlement they appropriated and applied the $607.43 to the mortgage security. It is insisted, on behalf of the defendants, that they had a right so to apply this money, even if there had been a previous application of it to the debt due upon the decree. This certainly is not correct. As between John C. Schenck and William Schenck, this might be done; but it could not be when the rights of a party, standing in the relation that this complainant does to that decree, are involved without his consent. When these payments were made, the Bishop mortgage, to whose equities the complainant is subrogated, was then an encumbrance upon the premises embraced in the decree, subject to that decree. All payments, then, which John C. Schenck made upon that decree, or which were made by him under circumstances which the law or equity would so apply, were

for the benefit of the Bishop mortgage, and no agreement made between John C. and William Schenck subsequently could deprive the holder of that mortgage of the benefit of such payments.

We must look, then, at the payments, and see if, when they were made, the parties, or if not the parties the law, applied them.

The general rule of law is, in reference to the appropriation of payments, " that a debtor owing several debts to the same creditor has a right to apply his payment, at the time of making it, to which debt he pleases. If he makes a general payment without appropriating it, the creditor may apply it as he pleases. And where neither party appropriates it, the law will apply it according to its own view of the intrinsic justice and equity of the case." 2 *Greenleaf* § 529.

*First.* Were these payments appropriated by the debtor? This may be shown, not only by the express declaration of the debtor, but by any circumstances from which his intention can be inferred. *Note* 1, 2 *Greenleaf* § 530. But the circumstances from which the intention is to be presumed must be known to the creditor at the time—the intention must be signified to the creditor in some way. Thus it has been held, that an entry made by the debtor in his own books of account is insufficient to determine the application of the payment. *Manning* v. *Westerne,* 1 *Vern.* 606. There is nothing in this case to show any appropriation made by the debtor. In the books the charges are general, without anything in their mode of entry to indicate any intention of the debtor, at the time they were made, to appropriate them to any particular debt. There is no evidence independent of the books to show any application by the debtor.

*Second.* Was there any appropriation by the creditor, William Schenck? There is no evidence of any kind that there was any, nor are there any circumstances in the case from which it may be inferred that, at the time

the payments were made, William Schenck made any appropriation of them. The probability is, from the dealings of the parties, that the payments were made by the debtor, and received by the creditor, without a thought, at the time, of their appropriation to any particular debt.

These payments not having been appropriated by either party at the time they were made, and a third party being interested in their appropriation, if any equities attached on behalf of the third party, it was not in the power of the debtor and creditor, at a subsequent period, to make an appropriation affecting the equities of such third party. We must look, then, at the intrinsic justice and equity of the case to ascertain whether the Bishop mortgage can claim the benefit of the payments.

Where a general payment is made without application by either party, and there are divers claims, some of which are but imperfectly secured, the court will apply it to those debts for which the security is most precarious. 2 *Greenleaf's Ev.* § 533, *note* 3.

William Schenck had two securities—the decree and a mortgage security. The former was safe, and ample to secure the debt—the mortgage security was precarious. It has eventually turned out that, even with the benefit of these payments to reduce the latter debt, the creditor is a loser. If by the court's applying these payments to the decree, both securities of William Schenck could be satisfied, then it would be just and equitable so to apply them; for such appropriation would be no injury to William Schenck, and would secure to the Bishop mortgage the benefit of the debtor's property, which otherwise it must lose. But that is not the case. If these payments are appropriated to the decree, William Schenck must inevitably be a loser to that amount. Such an appropriation by the court will be taking money out of the pocket of William Schenck, and placing it in that of the complainant. William Schenck has done nothing to prejudice the security under which the complainant claims, and I can-

not see any principle of equity upon which the court can give to the latter the benefit of these payments at the expense of the former. The master was right in appropriating the $607.43 as he did.

As to the sum of $904.82, the same principles control the application of the payments which constitute this amount. The money is in the hands of William Schenck. To appropriate it to this decree is taking the money from him, and giving it to the defendant. The court cannot do this unless the complainant can show that he has a better right to have the benefit of that money than William Schenck. This he has not done.

The *second exception* is—that the master, in taking and stating an account of the amount due to Asa S. Colton and wife, has not deducted therefrom the several sums of $486.23, and of $685.30, received by John C. Schenck, trustee, &c., from Isaac Story, the assignee of John C. Schenck, as dividends upon claims presented by the said trustee to the said assignee. Before the master, the complainant claimed that the sum of $412 of the above amounts of dividends received should be appropriated as a payment upon the decree.

I think the complainant is right in this exception, and that the sum of $412 should have been applied by the master as a payment upon the decree. I am inclined to think, upon reviewing my opinion upon which the decree of reference was made, that the master was misled by the unguarded manner in which I expressed myself in reference to this part of the case. If I had any doubt, when that opinion was prepared, as to the proper appropriation of these dividends, I am now perfectly satisfied that they should be appropriated to the decree.

On the 19th of March, 1836, John C. Schenck made an assignment for the benefit of his creditors. He was then trustee for Margaret Colton. He owed her, as executor and devisee under his father's will, two legacies, one of which was a lien on the Slayback farm, as it was

called, and the other on the homestead farm, which latter was devised to John C. Schenck, subject to the legacy, and part of which is the subject of this controversy. On the 16th of August, 1836, John C. Schenck, as trustee of Margaret Colton, presented a claim to James Story, his assignee, for $4843.11, which included the amounts of principal and interest then due on the Slayback and homestead farm legacies, $3137.31 being due of Slayback legacy, and $1705.80 on the homestead legacy. Foreclosure suits were commenced on both these farms by the Johnsons, mortgagees, to whom John C. Schenck had mortgaged them. On the 6th of February, 1837, the agreement was made between the parties to the suit in reference to the terms of the decree to be entered. Besides the stipulation in the agreement, that the mortgages were to have priority in payment over the legacies, was this, that in case the residue of the moneys raised out of the mortgaged premises, after payment of the mortgages, should not be sufficient to pay the legacies, then the dividends which the said legatees and the said mortgagees should receive from the assignee of John C. Schenck upon the said legacies and upon the bonds accompanying the said mortgages should be applied to making good the deficiency. All the parties to this agreement presented their claims to the assignee. On the 6th of February, 1836, two decrees were entered, by one of which the Slayback legacies were secured, and by the other the homestead legacies. On the second of August, 1837, the decree by which the Slayback legacies were secured was settled. They amounted, on that day, to the sum of $6702.15. The sheriff paid to the solicitor of the legatees $3419.75, and John C. Schenck gave to William Schenck, one of the legatees, a bond and mortgage for $3283.40, which two sums made the amount due them. As to the other decree, the claims of the mortgagees were satisfied, but not of the legatees. As matters now stood, it is evident that none of these claims were entitled

to any dividend from the assignee of John C. Schenck, except the claims of the legatees on the homestead decree. The other decree was satisfied, both as to the mortgages and legacies; and in this decree (the homestead decree) all the other claims but that of the legatee were satisfied. And yet, on the 1st of November, 1837, John C. Schenck, as trustee of Mrs. Colton, received a dividend of $486.73 on the claims which he had presented on the 16th of August, 1836, to wit, on $3137.31, the amount due when the claim was presented on the Slayback legacy, and on $1705.80, the amount due on the homestead legacy. And on the 31st of August, 1841, John C. Schenck, as trustee, received a further dividend of $685.30 on the same claims. Of this sum $412 was the proportion of the homestead farm legacy: the balance was wrongfully received, because the claim itself had been satisfied by the land upon which it was a lien. But the only question in which we are now interested is this—why should not the $412 be appropriated to the homestead legacy, upon which it was specifically paid? At the time it was received by John C. Schenck, as trustee of Margaret Colton, he was the owner of the land upon which the homestead legacy was secured by the outstanding decree—and this is the reason given by the master why the credit should not be given on that decree. The master, in his report, says, "I am of opinion that this claim for credit should not be allowed. At the time that said first dividend was paid to said John C. Schenck, he was really the owner of the land charged with the said homestead legacy. It is true that the legal title to it was then vested in John Gulick, who had bought it at the assignee's sale. But he had bought it up for the benefit of John C. Schenck, as appears by the pleadings and proofs in this cause, and afterwards conveyed it to him. He bought it for the benefit of Schenck, and held it for him. Schenck was therefore the party beneficially interested therein, and in equity the owner of the land.

Before the time when the second of said dividends was paid to said John C. Schenck the said farm had been conveyed to him in due form, and he was vested with the legal title. He being therefore, at the time when he received the said dividends, the owner of the land on which the said homestead legacy was charged, the land could not be considered as discharged to the extent of said payments, or of so much thereof as was applicable to the homestead legacy, unless he paid the same to Mrs. Colton, or duly invested it for her use. He did not do either. He could not therefore claim that the land was discharged, and the complainant in this suit cannot in this respect claim more than John C. Schenck could do if he were now before the court."

The master is correct in the principles he lays down. His conclusion is erroneous in consequence of his assumption that the complainant does not stand in a more favorable position before the court, in reference to the applications of payments on the decree, than John C. Schenck himself would, if he were here. I repeat that I am responsible for this error, and not the master. But that it is an error I am perfectly satisfied.

As between Margaret Colton and John C. Schenck, it is very clear that a court of equity would preserve the lien until the money was actually paid; for how could John C. Schenck ask a court of equity to discharge his land of the encumbrance, when he had not paid it? John C. Schenck received the money with the consent of, and as the trustee of Margaret Colton. If he did not pay over the money, it is but sheer justice, as between them, that Margaret Colton should hold the lien until she receives her money. But this money was not received by John C. Schenck for the benefit of Margaret Colton alone. It was paid for the benefit of the James Bishop mortgage as well as for Margaret Colton's benefit. John C. Schenck was the common debtor of Margaret Colton and James Bishop. The debts of both of them were se-

cured on the same land of the debtor. Margaret Colton's had the priority: of course every payment made on her debt was for the benefit of the sound security. The assignee of the common debtor had in his hands the sum of $412 of the debtor's property—a fund created by the debtor himself, and placed in the custody of the law for the very purpose of paying on the first encumbrance on his land, and thereby enhancing the value of the second security. James Bishop had as much right to have that money paid on Margaret Colton's claim as she herself had. But the money was in the hands of a third person, and no one could obtain it except Margaret Colton herself or her authorized agent. The moment she received it, it enured to the benefit of James Bishop. She authorized John C. Schenck to receive the money. He acted as her agent. When he received it James Bishop was entitled to the benefit of it. Neither law or equity held him responsible for the proper appropriation of the money. The principal must suffer for the default of his agent, but the consequence of such default cannot be visited upon an innocent third person. Suppose, instead of its being $412, it had been the full amount of the legacy, can it be doubted that James Bishop's mortgage would have been relieved of the former encumbrance, and ought to have been, upon the plainest principles of law and equity? Take this instance. A. and B., each, hold a mortgage on the property of C. B. holds the second encumbrance. C., the mortgagor, creates a fund to pay off the first mortgage, held by A., and it is placed in the hands of D., a third party. A. gives C., the mortgagor, a power of attorney to receive the money. When he receives it, is not the second mortgage relieved from the prior encumbrance? If C. does not pay over the money, it is true a court of equity will retain the lien for the benefit of A., but not against B., the second mortgagee. *Qui facit per aliam, facit per se*, and the receipt of the money by C. was the same as its receipt by A., as far as

it affected B., a third party.   It is very plain that the position of B. and C. are not the same.   They differ in the same respect precisely as the difference between John C. Schenck and James Bishop, or Terhune, the complainant, who holds under Bishop.   If John C. Schenck did not pay the money in question to Margaret Colton, she alone must suffer for the misconduct of her agent.   It is not right that the default of her agent should be visited upon an innocent party.   She may protect herself against her agent by holding on to her security, but she cannot hold it against James Bishop.

*Third exception.*   It is shown very clearly that the debt due from John C. Schenck to Asa S. Colton and wife amounted to the sum of $5000.   The payments made from time to time were the interest upon this sum.   They were appropriated, when paid, by the debtor, and were received by the creditor for this purpose.   There is no just ground upon which the court can interfere with the appropriation thus made by the creditor and debtor mutually.   In the $5000 was included the amount due on the homestead legacy.   The amount so due at the time the payments commenced was $1724.38.   The whole amount of payments was $1262.50.   The proportion of this amount to which the legacy is entitled is $434.41, and this amount the master has credited upon the decree.   The master was correct in not allowing interest on this sum.   At no time when the payments were made did they exceed the amount of interest due upon the legacy.   At the date of the master's report, there was upwards of $1300 interest due on the amount of the legacy.   There could be no propriety, therefore, in the master's allowing interest on the payments.

*Fourth exception.*   The master was right in not allowing any payments prior to the decree made in the cause between Caleb Johnson and Enoch Johnson, complainants, and John C. Schenck and others, defendants.   The order of reference confined him to stating the accounts subsequent to the decree.

It is now insisted, on behalf of the complainant, that the evidence before the master, in addition to that which was before the court at the time the order of reference was made, shows the propriety of going back of the original decree referred to, and stating an account of the payments made previous to that time. I have carefully examined all the evidence before the master, and I do not think it affords any additional aid to the court in determining the rights of the parties to that which was furnished when the opinion was delivered, which resulted in the order of reference to the master.

The first, third, and fourth exceptions are overruled. The second exception is sustained. There is no necessity of referring this matter back to the master. He reports the amount due the Coltons at $3135. From this must be deducted $412. $412.68, the amount claimed by Colton under the second exception, consisting of so much of the two dividends as was applicable to this legacy, viz. one sum of $170.58, received November 1st, 1837, and the other, of $242.20, received August 31st, 1841. On the first of these interest must be allowed, on the second not. By calculating interest on the decree till November 1st, 1837, adding it, and then deducting the $170.58, and by adding interest since, deducting what the master deducted, and also the second dividend, so far as applicable, the sum due Colton and wife appears to be $2614.94 at the date of the report. Interest is not allowed on the second dividend, because more was then due by way of interest than that dividend amounted to. The report will be corrected in that particular, and in other respects stand confirmed. The final decree will conform to this correction. Upon the complainant's paying to William Schenck and the Coltons the amounts thus found due them, respectively, the decree will be cancelled, otherwise the sheriff will be ordered to sell, and raise the amounts.