The complainant and John F. Via Cava are joint makers of a note for $8,500, dated February 2d 1933, payable to the defendant trust company. The complainant alleges an oral agreement with the trust company, by which he was to be chargeable with only one-half of the face of the note. The trust company is under the supervision of the commissioner of banking and insurance of the State of New Jersey, and is in liquidation under the provisions of the Altman act. It instituted an action in the New Jersey supreme court against the complainant and Via Cava, to recover the face amount of the note — $8,500. The complainant applied for, and obtained from this court, a preliminary restraint against the prosecution of the law action. *Page 447 
The bill contains a second cause of action whereby the complainant seeks a decree declaring him to be the true and equitable owner of a savings account in the defendant trust company, amounting to $2,637.45, and numbered 35779. The savings account was opened by complainant's father, Antonio Verdi, on January 30th, 1930. The complainant alleges the account is his and that his father, in opening the account, opened it for him as his agent, and did so pursuant to his directions. Antonio died on August 5th, 1936. The bill seeks to enjoin the defendants from instituting, or prosecuting any actions against the complainant for the purpose of collecting any indebtedness which he may owe to the trust company until he receives credit by way of set-off of the balance of said bank account against any such indebtedness.
The defendant trust company's claim against the complainant appears to arise out of a transaction between one Daniel J. Marotta and John F. Via Cava, who borrowed $30,000 from the defendant trust company on a promissory note sometime in December, 1928, or later. Before the loan was granted, the trust company insisted upon Marotta and Via Cava obtaining an endorser upon the note. The complainant was procured for the purpose. He signed the note as an accommodation endorser. Marotta and Via Cava signed as makers. Payments were made on account of the note at different periods; and by April, 1932, the principal of the loan was reduced to $8,500.
In the year 1932, the trust company employed one Murdock Claney, as "Credit Manager." It paid him an annual salary of $6,000. Claney testified, and his testimony is supported by Zaremba, the secretary and treasurer of the trust company, that his duty, in part, was to collect moneys owed to the trust company on commercial paper.
Via Cava, in April, 1932, was indebted to the trust company in the sum of $68,000 on promissory notes, in addition to his liability on the note of $8,500. He was also liable as principal on a $10,000 bond secured by a mortgage on real estate. Via Cava deposited as security with the trust company for these obligations his life insurance policy and certain *Page 448 
real and personal assets. When he deposited these securities, he applied to the trust company for an additional loan of $6,000. The trust company allowed the loan of $6,000 upon certain conditions as expressed in Exhibit C-6. Via Cava was engaged as a fruit dealer in the city of New York. He did business under the name of Crocco Company, and Crocco Fruit Company. Out of the loan of $6,000 the trust company advanced, at the direction of Via Cava, $4,500 of it to Crocco Company, or Crocco Fruit Company; the balance of $1,500 was loaned in the name of John's wife, Eva Via Cava. The latter sum was held by the bank and applied to the interest on Via Cava's obligations. The $4,500 was used by Via Cava to finance his New York City fruit business.
Via Cava testified that at the time he deposited his securities with the trust company, he directed, in the event of a sale of the securities, that from the proceeds thereof, the $8,500 note should be first satisfied, and if any balance then remained, the same was to be applied on account of his other indebtedness.
In January, 1933, Verdi conferred with Claney, the credit manager of the trust company, in the course of which he stated that he wanted the trust company to reduce to judgment its claim against all parties on the note; or, in the alternative, to permit him to make a separate note as maker, in the amount of $4,250 in satisfaction of his obligation under the note. Claney testified that he had a credit investigation of Verdi made, which convinced him that except so far as his salary was concerned, Verdi was judgment proof. Marotta, who was the joint maker with Via Cava, had become financially worthless, and would sign no renewal notes.
Via Cava and the complainant both signed the $8,500 note as makers. The testimony of the complainant, and of Claney, was, in effect, that the bank agreed to hold Verdi liable for only one-half of the face value of the note — or the sum of $4,250. Verdi says that in consequence of such agreement, on March 28th, 1933, he made a payment to the trust company of $1,762.80 against the note indebtedness of $8,500, and that thereupon he, with Via Cava, executed a new note for the balance of the principal — or $6,835. *Page 449 
Claney severed his relation with the trust company on May 1st, 1933. The last mentioned note became due on May 3d 1933, and Verdi then refused to execute a renewal of it. But he did agree to pay his share of the balance which, he declared, remained due under his oral agreement with the trust company through Claney.
The executive committee, and the board of directors of the trust company, then refused to accept Verdi's offer. However, in October, 1934, the directors of the trust company offered to settle with Verdi for approximately $2,300. Verdi said he, then, was not in a position to pay the trust company the sum of $2,300. Subsequently, Verdi did offer to pay that sum to the deputy commissioner of the department of banking and insurance, but the deputy commissioner maintained he was without authority to accept any amount less than one hundred per cent. cash.
Later, the law action was instituted against Verdi, and a judgment by default was entered against him on November 13th, 1935. The judgment was afterward reopened by an order made by Chief-Justice Brogan, dated April 15th, 1937, and Verdi was permitted to plead in a limited degree in defense to the action. Then, this suit was instituted.
In his testimony relating to the allegations in the bill of complaint about the savings account, Verdi said that on January 3d 1930, he handed his father $4,750 and told him to deposit it in the trust company in a savings account, in his, Antonio's name. He said he explained to his father at the time that he was not to consider the money as a gift to him; but that in the event anything happened to him, the complainant, he then could claim it as such. The complainant retained the bank book. There were withdrawals from the account, made by Antonio. The withdrawals were made at the complainant's direction; and the moneys so withdrawn were turned over by Antonio to the complainant. All the moneys deposited in the account were given, for such purpose, by the complainant to Antonio.
Complainant said that prior to Antonio's death, he made several demands upon the officials of the trust company to *Page 450 
permit him to set off the balance of the savings account against his, complainant's, debt, but they refused to comply with the request. The complainant submitted to the commissioner of banking and insurance proof of his ownership of the account, which was accompanied by renunciations of all persons who might possibly have an interest in the account; but the commissioner refused to grant the set-off.
In an action at law upon a written instrument, neither party to the action will be permitted to introduce evidence, either oral or written, tending to prove that prior to or contemporaneously with the execution of the writing, the parties agreed to terms contrary to those included in the written instrument. Naumberg
v. Young (Supreme Court, 1882), 44 N.J. Law 331;Commonwealth Roofing Co. v. Palmer Leather Co. (Court ofErrors and Appeals, 1902), 67 N.J. Law 566; Gerli v. NationalMill Supply Co., 78 N.J. Law 1; affirmed (Court of Errors andAppeals, 1910), 80 N.J. Law 464; Castelbaum v. Wolfson
(Court of Errors and Appeals, 1918), 92 N.J. Law 165; Church
v. National Newark and Essex Banking Co. (Court of Errors andAppeals, 1921), 97 N.J. Law 237. The policy of equity is to follow the law; but it will not do so where such a course will create an unfair, and perhaps fraudulent, advantage by one party over another through the exclusion of evidence under the so-called parol evidence rule.
Vice-Chancellor Pitney, in O'Brien v. Paterson Brewing andMalting Co., 69 N.J. Eq. 117, distinguished between parol evidence introduced for the purpose of varying the terms of a written instrument, and parol evidence introduced for the purpose of showing facts which control the operation of the instrument. He said (at p. 128):
"The real question for consideration in this case is whether, under the circumstances, it is equitable that the defendant should recover upon the note, and that is always the question in cases like this.
"Shall a payee who has procured from the maker a promissory note for a sum of money which the maker does not owe him, upon a pledge that he shall not be called upon to pay it, be permitted, in equity, to recover upon the note at law?" *Page 451 
And (at p. 131):
"As the court will not permit the statute of frauds to be made an instrument of fraud, so it ought not to permit the rule that parol evidence cannot be permitted to alter or vary a written contract to be made an instrument of fraud.
"In my judgment, it is what is known in equity as a fraud for one person to procure from another his promissory note upon a verbal promise or pledge that it shall not be enforced, and afterwards to invoke the rule in question in order to be able to enforce it."
To the same effect is the opinion of Vice-Chancellor Lewis inOak Ridge Co. v. Toole, 82 N.J. Eq. 541. The court of errors and appeals in the case of Gallagher v. Lembeck Betz BrewingCo., 86 N.J. Eq. 188 (at p. 190), said:
"We are of opinion that this bill, the statements of which for present purposes must be taken as true, makes out a complete case for equitable relief. It is very similar to the case of O'Brien
v. Paterson Brewing and Malting Co., 69 N.J. Eq. 117, in which Vice-Chancellor Pitney awarded an injunction and decreed the delivery of the note for cancellation. Whether the complainant may maintain a defense at law on these facts seems immaterial in view of the decisions. In Metler v. Metler's Administrators,19 N.J. Eq. 457, a similar case, it was held that even though the defense was good at law, the complainants were entitled as against the payee to an injunction against enforcement of the note at law, and to a decree that it be delivered up. InHeadley v. Leavitt, 65 N.J. Eq. 748, it was held that if the defense to the note be not good at law, the defendant at law may after judgment and without appeal of the judgment at law invoke the aid of a court of equity."
In Giberson v. First National Bank of Spring Lake, 100 N.J. Eq. 502,
Vice-Chancellor Berry, in discussing the parol evidence rule in equity, said (at p. 505):
"It is equally true, however, that numerous cases have arisen in the courts of equity of this state in which parol evidence has been admitted respecting the rights of the parties under written instruments, including promissory notes, *Page 452 
which would not have been admitted had the issue been framed at law, the courts in such cases uniformly distinguishing between parol evidence to vary a written instrument and parol evidence showing facts which control its operation."
And (at p. 507):
"But equity does not always follow the law. `Throughout the great mass of its jurisprudence, equity, instead of following the law, either ignores or openly disregards or opposes the law.' 1Pom. 427.
"Acting on more liberal principles, equity often softens the rigor of the law, and although a party's legal rights are, apparently, clear on the face of a written instrument, that does not preclude a court of equity from inquiring into the circumstances under which the document was executed or procured in order to determine whether or not the instrument should be given the effect which at law would necessarily follow from its terms. Such inquiry might indicate a situation which would make it inequitable to enforce legal rights."
To the same effect is the case of Downs v. Jersey CentralPower and Light Co., 115 N.J. Eq. 348; affirmed, 117 N.J. Eq. 138.
In this case the court of errors and appeals, through Mr. Justice Heher, said (at p. 139):
"This rule obtains in equity as well as at law. It is a rule of substantive law, and not of evidence merely. But in the former jurisdiction fraud, mistake, surprise and accident furnish exceptions to this otherwise universal doctrine. To relieve against the consequences of the foregoing is one of equity's most salutary remedial functions, and, when a written contract is involved, parol evidence is always admissible, to establish the basis for such equitable interposition."
It is my opinion that Verdi, the complainant, in changing his position as an accommodation endorser to that of a maker of the note, gave up defenses which he could not interpose as a maker. I believe he became a maker of the note by reason of the representations of — or the agreement with — Claney. If the defendant trust company, having knowledge of the representations made by Claney, stood idly and silently by and permitted the complainant to change his position, intending *Page 453 
not to be bound by his representations, with the design to accept whatever advantage the change created, then, of course, such attitude is reprehensible, and this court should and will relieve against such a situation.
The complainant argues that in January and February of 1933, he was contingently liable to the trust company on the $8,500 Marotta note; and that since he was merely an accommodation endorser, and in the event he were obliged to pay the note, he could have compelled either Marotta or Via Cava, or both of them, to make contributions to him to the extent of the moneys he would be compelled to pay. Hill v. Buchanan (Court of Errors andAppeals, 1904), 71 N.J. Law 301; Morgan v. Thompson (Courtof Errors and Appeals, 1905), 72 N.J. Law 244; Deutsch v.Pocoroba (Court of Errors and Appeals, 1931),108 N.J. Law 279.
The complainant says that the oral agreement was supported by valid considerations, which were as follows: (1) He changed his position as an accommodation endorser to that of maker of the note; (2) that the Marotta note unquestionably was a "dead asset," for which the bank received a "live asset" in the note for $8,500 made by him and Via Cava; (3) that if he had paid, or was compelled to pay, the Marotta note, or any part thereof, he could compel Via Cava to make him whole; (4) that while the bank benefited by him becoming a maker instead of remaining an endorser, he, the complainant, suffered a detriment by that change of position; (5) that he, by giving up his right against Via Cava, lost probably any rights which he might have had to compel Via Cava to contribute the amount of money which he, the complainant, might be called upon to pay on account of the notes of February 2d 1933, and April 3d 1933; (6) after relying upon the face of the oral promise, he paid $1,762.80, and upon the renewed promise that he would never be held for more than $2,487.20, he signed the note of April 3d 1933. United andGlobe Manufacturing Co. v. Conard, 80 N.J. Law 286. In this last cited case, Chancellor Pitney (at p. 289), said:
"We entertain no doubt that an agreement to forbear action *Page 454 
at law against the Standard Company for the existing account would furnish a sufficient and lawful consideration for the making of the bond. Such a promise, where no period is fixed, imports that the forbearance shall be for a reasonable time, and (at least if followed by actual forbearance for a reasonable time) furnishes a sufficient consideration for the undertaking of a third party to pay the indebtedness. 1 Pars. Cont. bk. 2 ch. 1
§ 5; 1 Chit. Cont. (11th. Am. Ed.) 40; 6 Am. Eng. Encycl.L. (2d. ed.) tit. `Consideration' 743, 748; 9 Cyc. tit.`Contracts' 338, 342, 344; Oldershaw v. King (1857), 2Hurl. Nor. 517; Boyd v. Freize (1856), 5 Gray (Mass.)553; Howe v. Taggart (1882), 133 Mass. 284; Strong v.Sheffield (1895), 144 N.Y. 392."
In the case of Schenkel v. Schenkel, 8 N.J. Mis. R. 863;152 Atl. Rep. 322, the supreme court, 1930, considering a similar case, said (at p. 864):
"It has been held that forbearance of suit by a person who may have a just claim affords consideration for a promise by a third person to pay such debt if proceedings are waived. See Unitedand Globe Rubber Co. v. Conard, 80 N.J. Law 286; Giglio v.Kramer, 133 Atl. Rep. 778. If such forbearance affords consideration for a promise to pay the debt of another, it appears to be sufficient consideration for an independent undertaking of the person to be benefited by such forbearance. There was, therefore, a good consideration."
It is apparent that in changing his character on the note, complainant suffered a detriment, and a benefit to the trust company resulted. The change and consequent results, I am satisfied, were obvious to the defendant trust company. This knowledge is considered under section 99 of the Restatement ofthe Law of Agency, as follows:
"The retention by a purported principal, with knowledge of the facts and before he has changed his position, of something which he is not entitled to retain unless an act purported to be done on his account is affirmed, and to which he makes no claim except through such act, constitutes an affirmance unless at the time of such retention he repudiates the act. Even if he repudiates the act, his retention constitutes an affirmance at the election of the other party to the transaction." *Page 455 
 Bodine v. Berg, 82 N.J. Law 662; Dunston Lithograph Co. v.Borgo (Court of Errors and Appeals, 1913), 84 N.J. Law 623;Howard v. West Jersey and Seashore Railroad Co., 102 N.J. Eq. 517; affirmed, 104 N.J. Eq. 201. Mechem on the Law of Agency §151, says:
"One of the most unequivocal methods of showing ratification of an agent's act is the bringing of an action at law based upon such act. Thus, a demand made by an agent will be deemed to be ratified by the principal if he brings an action founded upon such demand, and ratification by a bank of its cashier's endorsement of a note is established by the fact that the bank prosecutes an action on the note in the name of the endorsee * * *."
I believe that the institution of the action in the New Jersey supreme court by the trust company on the note of April 3d 1933, is a ratification of Claney's acts. The trust company cannot take the position that it will accept the benefits and, at the same time, close its eyes to the detriments.
Claney was hired as credit manager by Zaremba, the secretary and treasurer of the trust company, and by Volk, its president, after consultation with the executive committee and the board of directors. Although no formal minute of the employment was entered on the records of the executive committee, or of the board of directors, it is clear that Claney was employed by the trust company. The evidence shows that he had charge of all the old loans, all renewals thereof, and all applications for new loans. He kept separate portfolios for current notes, old notes which were past due and unpaid, and applications for new loans. In passing on applications for loans, upon proposed renewal agreements of old loans, and other matters, Claney acted without the formal approval of the executive committee or the board of directors, although he testified that he worked with various members of the executive committee every day, and no formal minutes of their decisions were recorded, all of his acts had the informal approval of the executive committee. His recommendations to the executive committee, or the board of directors, were generally accepted. He was hired chiefly for the purpose of stabilizing the commercial paper of the trust company. He *Page 456 
was authorized to communicate and confer with all its commercial paper debtors and to make any contracts with the debtors which in his opinion were beneficial to the trust company. He testified that in his opinion the transaction by which Verdi executed the note of February 2d 1933, as maker with Via Cava, upon condition that he would never be held liable for more than one-half thereof, was a beneficial transaction from the viewpoint of the trust company. He also testified that he considered such agreement well within the purview of his authority.
The collateral security, consisting of real and personal assets, deposited by Via Cava, was disposed of by the trust company, and from the disposition, it realized $2,000 or $3,000 on one occasion, $4,000 on another, and $800 on a third occasion. These moneys, so realized, were not applied by the trust company to the $8,500 indebtedness as Via Cava directed should be done at the time he deposited the collateral security. The trust company, under the circumstances, was without power to select a particular debt and apply the proceeds arising from the sale of the securities. It should have followed the debtor's directions. Vice-Chancellor Buchanan in the case of Grover v. Board ofEducation of Franklin Township, 102 N.J. Eq. 415; affirmed,104 N.J. Eq. 197, stated the rule in these words:
"As between debtor and creditor it is the debtor's legal right to direct that any payment he makes shall be applied to whichever of two or more debts he chooses; equally it is the creditor's legal right to select the application if the debtor fails to do so at the time of payment. Terhune v. Colton, 12 N.J. Eq. 232
(at p. 237); affirmed, Ibid. 312 (at p. 320). These two rules of law are well established not only in New Jersey but generally. See tit. `Payment,' 30 Cyc. 1228 et seq.;21 R.C.L. 88 et seq."
See, also, Leeds v. Gifford, 41 N.J. Eq. 464; affirmed,45 N.J. Eq. 245 (Vice-Chancellor Van Fleet, 1886).
While the bill of complaint is silent as to Via Cava's directions to the trust company as to the application of the funds — because the complainant says he never learned of it until *Page 457 
Via Cava testified to it at the hearing — yet, I feel that the complainant is entitled to amend his bill to include such an allegation. But, notwithstanding, the court possesses the power to decree what is equitable regardless of the lack of appropriate prayers, or because of failure to observe formalities in pleading. Cohen v. Cohen, 121 N.J. Eq. 299.
All the evidence seems to indicate that the complainant's prayer for relief, under the second cause of action in the bill, should be granted. The testimony stands uncontradicted that the money in account No. 35779 belongs to the complainant. The transaction between the complainant and his father, Antonio, was one that was to become effective only upon the death of the donor. The account was opened in the decedent's name as suggested by the complainant, and the moneys that were withdrawn from the account were withdrawn at the direction of the complainant, and the bank book remained in the possession of the complainant and was never delivered to the decedent, Antonio. Swayze v.Huntington, 82 N.J. Eq. 127; affirmed, 83 N.J. Eq. 335; Mullen
v. Mullen, 98 N.J. Eq. 90; affirmed, Ibid. 727; Kirkpatrick v.Kirkpatrick, 106 N.J. Eq. 391; Pabst v. Haman, 120 N.J. Eq. 451; 121 N.J. Eq. 263; Salmon v. Pittenger, 122 N.J. Eq. 165;Barrett v. Cady, 96 Atl. Rep. 324.
I am satisfied that Verdi is entitled to a set-off by the commissioner of banking and insurance of the moneys on deposit in the last mentioned account. Receivers v. Paterson Gas LightCo., 23 N.J. Law 283; Roseville Trust Co. v. Barney,89 N.J. Law 550; Singac Trust Co. v. Totowa Lumber, c., Co.,112 N.J. Law 99; Newman v. Hatfield Wire and Cable Co.,113 N.J. Law 484; Neptune City v. Seacoast Trust Co., 116 N.J. Eq. 357;McFarland v. Withers, 122 N.J. Eq. 167.
I shall advise a decree granting the relief prayed for. *Page 458