## George Lockhart v. John Van Alstyne.

*Corporations: Directors: Reports: Individual liability: Debts.* Liabilities of a company which may give causes of action against it and result in judgments, but which do not constitute present debts, are not within the statute (*Comp. L., 1857,* § *1821)* making the directors of manufacturing companies, on their neglect or refusal to file the reports, etc., required by the statute, individually liable for all debts of the corporation contracted during the period of such neglect or refusal.

*Corporations: Dividends: Preferred stock: Public policy: Contracts.* An agreement by a corporation to pay annual dividends to preferred stockholders, without reference to its ability to pay them from earnings, is opposed to public policy and void.

*Contracts: Construction.* A contract will not be so construed as to subject it to this principle where any other construction is reasonable.

*Preferred stock: Certificates: . Guaranty of dividends: Earnings.* An endorsement on certificates of preferred shares in a corporation, issued by order of the directors, as follows: "five per cent. semi-annual dividend guaranteed from Sept. 1, 1872," signed by the treasurer, is not to be understood as a guaranty that the corporation will pay dividends at all events, but only a guaranty to pay dividends to the holders of the certificates in preference to others, when the earnings of the corporation will warrant it.

*Dividends: Definition: Guaranty.* A dividend, in the common understanding of the term, when applied to something to be paid by corporations not insolvent, or in contemplation of dissolution, means a sum which the corporation sets apart from its profits to be divided among its members, and so the word must be understood in such a guaranty.

*Corporations: Preferred stock: Directors: Authority: Ratification.* The holder of such preferred stock is held not entitled to recover back, as money received to his use, the money paid to the company for the stock, on the ground of want of authority in the directors without the previous assent of the stock-

holders to issue such certificates, where it appeared that such stock had been distinctly recognized at the meetings of the corporation without any question of its validity having been raised.

*Heard October 14.    Decided January 12.*

Error to Superior Court of Detroit.

*Ward & Palmer* and *Alfred Russell*, for plaintiff in error.

*S. T. Douglass* and *G. V. N. Lothrop*, for defendant in error.

COOLEY, J.

The plaintiff seeks to recover of the defendant a sum alleged to be owing to the plaintiff by the Wyandotte Agricultural Works, and for which it is claimed the defendant is liable in consequence of the failure of the officers of that corporation, of whom he was one, to make and file the official reports required by law.   A recovery is resisted on several grounds, but as the question of corporate indebtedness seems first in point of order, we shall consider it first.

The supposed liability arises upon a certificate of stock issued by the officers of the corporation in accordance with a vote of the board of directors, of which the following is a copy:    "*Resolved,* that the company issue thirty-six thousand dollars of preferred capital stock, upon which a semi-annual dividend of five per cent., payable upon the first days of March and September in each year, shall be guaranteed by the company;   the first semi-annual dividend payable on the first day of September, 1872.    And the holders of any such preferred stock shall have the privilege, for one year after the first day of March, 1872, of exchanging the same, if they desire, for the common stock of the company."

The certificates of stock issued under this resolution were in all respects in the usual form, but the following endorsement was made upon them:    "Full paid stock; 5 per cent semi-annual dividend guaranteed from Sept. 1, 1872.

Elisha Mix, Sec'y and Treas'r." The plaintiff became the purchaser of certificates representing $2,000 of stock, upon which the company paid two semi-annual dividends, but has failed to pay any more; and it is conceded that those which were paid were not and could not be paid from profits, because there have been no profits since the certificates were issued; and the corporation has now ceased to carry on the business for which it was organized.

The statute which the plaintiff relies upon is *Sec. 1821 of Comp. L. of 1857*, which, on the neglect or refusal of the directors of manufacturing companies to comply with certain provisions of law regarding the filing of their articles of association, and of annual reports showing their financial condition, declares that such directors "shall be jointly and severally liable in an action founded on this statute, for all the debts of such corporation contracted during the period of such neglect or refusal." This statute, it will be perceived, only makes the directors personally liable for "debts." Liabilities of a company which may give causes of action against it and result in judgments are not within the statute unless they constitute present debts. A debt is that which one person is bound to pay to another, either presently or at some future period: something which may be the subject of a suit as a debt, and not something to which the party may be entitled as damages in consequence of a failure to perform a duty or keep an engagement. A right to a dividend from the profits of a corporation is no debt until the dividend is declared. Until that time the dividend is only something that may possibly come into existence, but the obligation on the part of the corporation to declare it, cannot be treated as the dividend itself.— *In re London India Rubber Co., Law Rep., 5 Eq. Cases, 525-6.* This seems to be conceded by counsel for the plaintiff, who insist that the guaranty in this case is not of dividends to be made necessarily of profits, but of dividends to be made from some sum which the corporation undertakes to set apart for the purpose, and which, if there are no profits for

the purpose, there is an absolute and unqualified obligation to pay from some other source. In other words, that the word " dividend " means only something to be divided ; and to the persons who are to participate in the division it is immaterial whence it comes, so that the fund be actually provided, and payment made in pursuance of the obligation.

We are referred to no authority in which the word dividend has been interpreted in accordance with this view, nor are we aware that it is used in this sense among business men. A dividend to the stockholders of a corporation, when spoken of in reference to an existing organization engaged in the transaction of business, and not of one being closed up and dissolved, is always, so far as we are aware, understood as a fund which the corporation sets apart from its profits to be divided among its members. A corporation of which it is said that it is making an annual dividend of ten per centum upon its stock, is supposed to be a prosperous corporation, because its gains leave it this clear annual per centage, which it can pay over without impairing its capital. A dividend among preference stockholders exclusively, is understood to imply that the sum divided has been realized as profits, though the earnings do not yield a dividend to the stockholders in general. We hazard nothing in saying that this is the primary and universal understanding of a dividend on stock, except when made use of in respect to a final closing up and distribution of assets on the occurrence of insolvency or in view of a dissolution. This is manifestly the view of the court in *Stevens v. South Devon Railway Co., 9 Hare, 312 ; Henry v. Great Northern Railway Co., 1 De Gex & Jones, 605 ; Taft v. Hartford, P. &. F. Railroad Co., 8 R. I., 310 ;* and in every other case in which we have found the word employed in any connection corresponding to that in which it is made use of here.

The difficulty in this case springs from the fact that in the case of this corporation there are no profits from which a dividend can be made. The question arises, in view of

that fact, whether the guaranty becomes wholly inoperative for want of something to which it is applicable, or whether on the other hand it can be understood as binding the corporation to make payment of the dividend in any contingency, and to respond in damages to an equivalent amount in case of failure. The latter is the theory of the present suit; the plaintiff reading the guaranty as a promise in perpetuity to pay a semi-annual dividend of five per centum to the preference stockholders, profits or no profits; in other words, to pay it from profits if any there are, but if not, then from whatever assets or means the corporation may possess, so long as any thing shall remain to pay with.

If this be the correct view to take of the guaranty, it involves some results which will certainly be extraordinary. Whatever shall be the construction of this instrument, it will still remain true that a dividend, as generally understood, and as the public will understand it, is a sum which can be divided among stockholders without touching the capital stock. The declaration of a dividend is a most emphatic assertion that the corporation is in condition to make a division of profits, and is consequently enjoying some degree of prosperity. So generally is this understood that the making of a dividend when the capital must be encroached upon for the purpose, is looked upon as highly discreditable, if not absolutely dishonest and fraudulent, as involving an assertion of prosperity which, under such circumstances, would be deceptive, and tending to give to the corporation a credit to which it is not entitled. The corporation which should make such a dividend would, when the facts became known, be condemned by the public sentiment, and the officers who should participate would be looked upon as wanting in that business integrity which is essential to entitle them to public confidence. So forcibly has this been felt, that the legislature in providing for the formation of corporations has, in some cases, imposed penalties upon the corporate officers who participate in making dividends when the corporation is not in condition to war-

rant it; and this legislation is only an expression of the public sentiment, which condemns such action as unwise and misleading, and every way impolitic. And the impolicy is only emphasized and made the more distinct and manifest by the circumstances which surround this case.

For here the preference stock upon which the dividends were to be paid was issued for the purpose of strengthening the corporation, and giving it the necessary means to put itself on a footing of success. Indeed, the issue of such stock can very seldom be justified, except to strengthen the corporate standing, or to enlarge the corporate means and business. The issue is usually made when the corporation has reached a crisis in its affairs, and the corporators are unable or unwilling to put more means at risk in the business, but are nevertheless disposed to give to those who will do so a first participation in any profits which the increased means will enable them to make. The contracts made under such circumstances, usually in express terms confine the advantages of the new stockholders to this preference; and thus confined, there can be no reasonable objection to them, if they are entered into with full knowledge on the part of all concerned. But the guaranty in this case is understood to go farther, and not only give a preference in the division of profits, but to entitle the holder to such an apportionment of the assets of the corporation from year to year, when there are no profits, as may eventually consume the whole, leaving the other stockholders nothing. It is not a mere preference that is given to the holders under this construction; it is a preference with a perpetual promise to pay the largest interest permitted by law on the sum invested by them, profits or no profits; so that the holders have at the same time all the advantages of stockholders and of creditors, while their associates are postponed as stockholders, and, considered as representing the debtor corporation, they are deprived by the very contract itself of any reasonable probability of restoring the standing and strength of the corporation when once it shall

31 MICH.—11.

have ceased to be steadily and continuously prosperous. For an agreement to pay semi-annual dividends from earnings when there are any, and from capital when there are not, is only a new form of the undertaking by which the debtor is to pay from his profits if the ship comes in, and from the pound of flesh if it does not; every dividend from the capital being an attack upon the very life of the corporation, before which, under ordinary circumstances, it must inevitably and speedily give way. And thus the contract the only justification for which is the strengthening of the corporation, is found to contain within itself a provision which, except in the event of steady prosperity, must inevitably tend to its weakening, and almost certainly to its destruction.

It may be well also to consider what would be the position of the two classes of stockholders,—the common and the preferred,—with reference to the corporate management and business. Both, without doubt, have an equal right to participate in management, and officers may be chosen indifferently from either. Either class may be the larger, and by a combination of its members may secure control. Now, the earning of a dividend in any business depends more or less on many external circumstances,—on the general state of trade in the country, competition in the particular business, the condition of crops, accidents of fire and flood, new inventions affecting the use or the profitableness of machinery employed or fabrics produced, the dishonesty or carelessness of subordinates, and a thousand other circumstances which may seriously affect earnings, but against which care and foresight can but imperfectly provide. But perhaps more than on all these circumstances, a dividend will depend on the good judgment, fidelity and integrity of the managing parties; and the officers of a corporation who agree on its behalf to earn and pay one, can only be understood as undertaking for whatever good judgment, integrity and fidelity can accomplish. In this view the contract in question can only be regarded, on the

plaintiff's own construction, as a contract of guaranty that the integrity and good management of the officers shall produce the dividends. But suppose those officers to be, —as they well may be,—the preference stockholders themselves; then we have the corporation guaranteeing to them their own integrity and good management, and promising to make up to them from its capital whatever in expected results that management may fail to realize.

But these are not the only anomalous results that may flow from such a construction. To the success of a corporation it is important, if not essential, that there should be substantial harmony of interests among the corporators. Such harmony may exist among common and preference stockholders if the preference extends only to a division of profits, but when it goes farther it disappears and antagonism necessarily comes in. A preferred stockholder who is entitled to his dividend in perpetuity is interested in keeping a failing concern in existence until his dividends can wholly exhaust its means. A common stockholder is interested in bringing about a dissolution, because, when that takes place, the dividends will cease, the assets must be divided, and he may have a share. The whole capital and assets of the concern may consequently be at issue between these classes in the corporate elections; the one class anxious to put an end to the corporation, because only in that event can they have any thing to withdraw, while the other are concerned if possible to keep its means locked up where they are, though they may have wholly ceased to accomplish the ends of the corporate existence, because in that way they may at length absorb the whole. It may safely be asserted that legislation would never purposely have placed corporators in such anomalous relations. And it is certain that public policy is opposed to any tieing up of capital where it has ceased to be productive, in order that debts may accrue to absorb it. Moreover, the very statement of the effect of dissolution of the corporation upon this guaranty, shows how inaccurate it must be to speak of

the obligation created by it as constituting a " debt." A debt is the same, whether the debtor lives or dies, though in the latter contingency nothing may be realized ; but here, in the event of corporate dissolution, nothing is received by the supposed creditor, and nothing is due him.

A contract the necessary construction of which would be that on which the plaintiff relies, and which would lead or tend to the consequences pointed out,—which would require dividends when honesty and good faith to the public would forbid, and public opinion condemn them, which would antagonize the positions of different classes of men engaged in the same joint undertaking, and preclude harmony of action and union of effort, precisely under those circumstances when harmony and union would be most essential, under which the corporation making it must almost inevitably be destroyed unless it should enjoy continuous prosperity, and which, under some circumstances, would make one class of persons having a voice in the control and management of the corporation interested in so controlling its means as to keep them as long as possible in an unproductive condition, until by a slow process they can absorb them to the prejudice of their associates,—must necessarily be opposed to public policy and void. And a contract which will bear any other reasonable construction could not, consistently with the rules of law, and with regard to what must be deemed the intent of the parties, that their contract should be just, reasonable and beneficial, have this construction put upon it.

We think the guaranty here in question will bear the construction that the preference stockholders shall be entitled to five per cent. semi-annual dividends when there are profits to pay them, and not otherwise. Probably if profits were not realized to the necessary amount in any one year, they would be entitled when they were realized, to have all arrears made up.—*Henry v. Great Nor. Railway Co.*, 1 De Gex & Jones, 635 ; *Taft v. Hartford, etc., Railroad Co.*, 8 R. I., 334. This, we think, is what would be the general

understanding of such a guaranty, and this is as far as the law would permit a corporation to go in guaranteeing dividends to its own members; and to this extent no rule of good faith or of public policy is in the way. An individual holding and selling stock might give a broader guaranty, but that has nothing to do with the questions arising upon this instrument.

There are two branches to the plaintiff's argument: the other being that if the guaranty is void as opposed to public policy, or if there was any defect of authority in the directors of the company issuing the preference stock without a previous assent of stockholders, then the money paid by the plaintiff to the company for the stock, is money which the company received to his use, and which therefore he may recover in this action. Upon this it is sufficient to remark, that the guaranty properly construed is not void, but unobjectionable, and that if there was any defect in power in the directors to issue the stock, the corporation is not shown to have raised any question on the subject; and the recognition of the stock at the meetings of the corporation is fully shown.

The ruling of the court below appears to us correct, and the judgment will be affirmed, with costs.

The other Justices concurred.