CASE 44—PETITION ORDINARY TRANSFERRED TO EQUITY—

MAY 9.

# Oil City Land and Improvement Co. v. Porter.

### APPEAL FROM BARREN CIRCUIT COURT.

1. CORPORATIONS—SUBSCRIPTIONS OF STOCK IN.—It will be presumed that one who had agreed to take stock in a corporation, and subsequently executed his notes therefor knew when he executed his notes the provisions of the charter or articles of corporation of the company in which his subscription was made, and of which he thus became a member; and he must. therefore, be charged with knowledge that the articles of incorporation authorized the purchase or subscription of stock in other corporations. And this rule applies as well to charters formed under the general law as to those granted directly by the legislature.

2. FALSE REPRESENTATIONS—FRAUD.—It is a general rule when one is induced to take stock in a corporation by false representations of an agent thereof, or by the fraudulent concealment of material facts from him, touching the condition of the company, the contract is voidable at the option of the subscriber; but such representations or concealments must be concerning facts not within the knowledge of the subscriber. Where they touch the powers of a corporation under its charter, they are matters of law and will not vitiate the subscription.

Oil City Land and Improvement Co. v. Porter.

STONE & SUDDUTH FOR APPELLANT.

1. The evidence taken as a whole, and in connection with all the facts and circumstances, is decidedly against the contention of appellee that material facts were fraudulently concealed from him.

2. The appellee was bound to take notice of every provision and power set out and provided for in the articles of incorporation. They formed a part of the contract whereby he became a stockholder in the company. (Cook on Stock and Stockholders, vol. 1, p. 211.)

3. When the agent of a corporation makes false statements and misrepresentations in relation to matters open to the investigation of both parties, intending thereby to induce persons to subscribe for the stock, one so subscribing has no right to rely upon them, and if he does, it will be no ground for cancelling the subscription. (Waterman on Corporations, vol. 2, sec. 193, p. 73; 23 Ind., 572; 7 Blackford, 329; 95 U. S., 667; 34 Miss., 255; 17 Beavan, 87; 79 Ky., 552.)

4. The misrepresentations of an agent of a corporation as to its rights, powers or privileges under its charter, is not ground for cancellation of a subscription to its stock. (Parker v. Thomas, 19 Ind., 219.)

LEWIS McQUOWN FOR APPELLEE.

1. The evidence is conflicting as to whether Ritter told Porter of the intention to invest in the stock of the other company, and the chancellor below found on this issue for appellee, and that finding under the well settled rule of this court, should not be disturbed.

2. Corporations are chargeable with the fraudulent representations or suppressions of truth of their agents, without regard to whether the agent exceeds his authority or conceals its limitations. (Crumbe v. U. S. Min. Co., 7 Gratt. (Va.), 353.)

3. The execution of the notes was not a ratification of the agreement to subscribe stock, for before one can ratify an act he must know all the facts.

E. W. HINES ON SAME SIDE.

1. Even though appellee may at the time he executed the notes sued on have been chargeable with notice of the provisions of the articles of incorporation, these did not give him notice of the fact that there was at the time he subscribed an agreement to take a given number of shares of stock in another corporation, and he had no means of ascertaining this fact.

2. When the notes were executed the appellee had no *actual* notice of the concealed fact, and, consequently, there could have been no ratification. Constructive notice is not sufficient.

3. The well established rule is that a corporation can not claim or retain the benefit of a subscription which has been obtained through the fraud of agents, it matters not whether the agents had authority or exceeded his authority or concealed its limitations. And this rule applies alike whether there was false representation, or fraudulent concealment of facts. (Cook on Stock and Stockholders, secs. 140, 147 and 148.)

JUDGE LANDES DELIVERED THE OPINION OF THE COURT.

The appeal in this case was certified to this court by the Superior Court, which court had reversed a judgment rendered by the Barren Circuit Court in an action in which the appellant company was plaintiff against the appellee upon two promissory notes executed by the appellee for stock in the appellant company, for which he had subscribed or agreed to take. The company was incorporated and organized in November, 1889, under chapter 56 of the General Statutes, and the articles of incorporation were recorded in the office of the clerk of the county court of Jefferson county.

The general nature of the business of the corporation, as provided in the articles, was to buy, lease, sell and improve lands, and to acquire timber, mineral, oil and natural gas privileges. Besides, by one of the provisions of the articles, the company was authorized *to subscribe for stock in other companies or corporations.* By a prospectus or "subscription list," bearing date the 16th day of October, 1889, many of the promoters and proposed stockholders of the company then in contemplation pledged themselves respectively to take certain amounts of the capital stock, which was to be fixed at $100,000, in shares of a par value of $100 per share, but which the subscribers were to take and pay

for at the rate of $25 per share. This paper contained the following paragraph: "It is proposed to organize a town company, purchase these lands and build a town. The Kentucky Southern Oil and Gas Co. have agreed to locate within ninety days, a large refinery on the property, this company agreeing to donate ten acres for this purpose, *besides subscribing for one thousand shares of the said Kentucky Southern Oil and Gas Co. at $5 per share to be paid upon completion of said refinery.*"

The lands which it was proposed to purchase for the contemplated town site were situated in Barren county, on the railroad between Glasgow Junction and the city of Glasgow. The lands were eventually purchased and laid off into lots, the oil refinery built on the land donated for the purpose, and one thousand shares of the Kentucky Southern Oil and Gas Co. taken by the appellant company, and paid for at $5 per share, with the money received from the subscribers to the capital stock of the appellant company.

About the 19th of October, 1889, three days after the date of the "subscription list" above referred to the appellee through the solicitation of Judge Ritter, then of Barren county, and one of the promoters of the organization of the appellant company, and a subscriber to said preliminary or subscription paper, agreed to take forty shares of the stock of the proposed company, which was communicated to one of the promoters in Louisville by Ritter by a letter written by him, and the name of the appellee was signed to the paper by the person to whom the letter of Ritter was addressed, thus apparently pledging the appellee in writing, in advance of the actual incorporation and organization of the company, to take and pay for forty shares of the stock of the company at $5 per share.

The proof does not show that the appellee authorized, either verbally or in writing, the signing of his name to this paper, and there is nothing in the record to show that he even knew that it was expected that he would sign the paper. But it satisfactorily appears from the evidence that he recognized that he was pledged to take forty shares of the stock of the company on the terms named, for when it was necessary that there should be a meeting of those who were pledged to take the stock for the purpose of organizing the company, which meeting was called for and held on the 4th day of November, 1889, he verbally authorized Ritter, who attended the meeting at Louisville, to represent him and vote his stock, for which he was pledged, in the organization of the company under the articles of incorporation, which it seems were formulated and recorded on the 2d day of November. And afterwards, in the month of January, 1890, he executed his three notes to the organized company for $333.33 1-3 each, covering the amount of stock which he had verbally agreed to take, one of which notes he subsequently paid off. Failing to pay the other two notes after they fell due, the company commenced action on both of them in the Barren Circuit Court on the 18th day of September, 1891.

Defense was made to the action on the alleged ground that he was not aware, when he told Ritter that he would take forty shares of the stock of the company, that it was proposed to subscribe for the one thousand shares of the stock of the Kentucky Southern Oil and Gas Co., which fact he averred was fraudulently concealed from him by Ritter, and he alleged that the expenditure of $5,000 of the cash of the appellant company for the stock of said Oil and Gas Co. was made without his knowledge or consent,

and was unlawful and without authority, and was a misappropriation of the assets of the appellant company to the extent of $5,000.   It was also alleged that the Kentucky Southern Oil and Gas Co. had become insolvent, which was true, and that the appellant company was also insolvent which latter insolvency was brought about principally by the alleged unauthorized expenditure of the $5,000 aforesaid, while it was claimed in behalf of the appellant company that it was necessary that it should recover the money due on the notes of appellee in order that the company might be able to pay its debts.   The case having been transferred to equity, the appellee sought to have a receiver appointed and having made his answer a cross-petition against the directors of the company, he prayed that they might be compelled to account for the said $5,000, that the affairs of the company might be settled up, and the company restrained from collecting the notes sued on.

The allegations of fraudulent concealment and of unlawful and unauthorized expenditure of the money of the appellant company were denied both by the company and the defendants in the cross petition.   These were the principal matters in issue, and there was much testimony taken, especially on the charge of fraud.   But while the testimony was conflicting the court below found on the issues made in favor of the appellee, and by its judgment cancelled the appellee's subscription to the capital stock of the appellant company, and dismissed the petition of the plaintiff and the cross petition against the directors, but gave a judgment over against the appellant company for the amount paid by the appellee on the note paid by him for the one-third of his subscription.

Conceding that the appellee never saw the subscription

paper to which his name was signed as above stated before he was sued on the notes, and that Ritter did not tell him that it was the purpose of the company when organized to subscribe for one thousand shares of the Kentucky Southern Oil and Gas Co., and that he even intentionally concealed that purpose from him, still it would not follow that the appellee was entitled to have the notes he executed for the stock he agreed to take, or his subscription for the stock, which was made binding on him when he executed the notes, if not before, cancelled, or to have the money he paid on the first note repaid to him by the company. There is not the slightest evidence in the record that Ritter was the agent of any of the promoters of the proposed corporation at the time he solicited the appellee's subscription, or that any of the other promoters or subscribers knew that any concealment had been made, if indeed it was purposely made by Ritter, of the fact complained of by the appellee. He was not legally bound on the subscription paper, because it does not appear that any one had authority from him to sign his name to it, and if he had been thus bound it would have been only by reason of the fact that that it was a mutual undertaking on the part of all of the subscribers. But when the company was regularly incorporated and its organization completed, there was a different condition of affairs. It was not until nearly two months after this that the appellee did actually subscribe for the stock which he had previously agreed to take, and thus became legally bound to the body corporate for his subscription. There is no evidence that the company or any of its officers or agents deceived him, or induced him by any fraudulent means to execute his notes for the price of the stock, or to pay for any part of it. It must be presumed

that at the time he executed the notes and paid one of
them he knew the provisions of the charter or articles of
incorporation of the company under which his subscription
was made and of which he thus became a member. (Wight
v. Shelby R. R. Co., 16 B. Monroe, 4; Parks v. R. R. Co., 23
Ind., 572; Jenkins v. Prewitt, 7 Blackford, 329; Walker v.
R. R. Co., 34 Miss., 255; Ellison v. Mobile & Ohio R. R. Co.,
36 Miss., 572.)

He must, therefore be charged with knowledge that the
articles of incorporation contained the provision which has
been referred to, and which authorized the purchase or
subscription for stock in other corporations. And we hold
that this applies as well to charters formed under the
general law authorizing the organization of corporations
as to those enacted directly by the Legislature. The rule
on this subject is well stated in the opinion of the Superior
Court in the following language: "It is a general rule
that when a person is induced to become a stockholder of
one of these associations by false representations fraud-
ulently made by an agent thereof or by the fraudulent
concealment of any material facts touching the condition
of the company, the contract is voidable at the option of
the subscriber, and may be annulled by him. Such fraudu-
lent representations or concealments, however, must be
concerning facts not within the knowledge of the subscriber.
Where they touch the powers of a corporation under its
charter they are matters of law and will not vitiate the
subscription. Where a party makes a contract he must
at his peril inform himself of the legal consequences of his
undertaking. So a subscriber for shares in a corporation
must at his peril inform himself with regard to the pro-
visions of its charter or of its articles of incorporation "

The appellee has failed to show a state of fact that would authorize the court to decree the cancellation of his contract of subscription for the stock of the appellant company.

The judgment of the lower court cancelling his subscription, dismissing the petition and recovering against the appellant in favor of the appellee the amount of the note paid by him for one-third of his said subscription is, therefore, reversed and cause remanded, with directions to render a judgment against the appellee for the amount due on the two notes sued on. And if further proceedings are necessary to settle the affairs of the appellant company they may be had, but to be consistent with this opinion.