(90 App. Div. 109.)

McVITY v. E. D. ALBRO CO.

(Supreme Court, Appellate Division, First Department. January 15, 1904.)

1. CORPORATIONS—SUBSCRIPTION FOR STOCK—GUARANTY OF DIVIDENDS—ULTRA VIRES.

Plaintiff, having loaned money to a foreign corporation, was induced by its president to deliver up the note he had taken and receive stock of the corporation to the same amount, with a written guaranty of a 6 per cent. dividend. After paying the dividend for some time, it was refused on the ground that an agreement to pay dividends when the company was not earning them was ultra vires. *Held*, that plaintiff was entitled to rescind the agreement, and, though it was ultra vires, the corporation could not retain the benefit and compel plaintiff to retain the stock to his disadvantage.

2. SAME—OFFICERS—CONTRACTS—AFFIRMANCE.

Where the president of a corporation sold stock with a written guaranty of certain dividends, the corporation, by paying such dividends for some time, affirmed the contract.

3. SAME—FOREIGN CORPORATIONS.

Whether or not a foreign corporation was authorized to issue stock with a guaranty of dividends was determinable by the law of its residence, and a purchaser was not chargeable with knowledge of that law.

Van Brunt, P. J., and Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by James S. McVity against the E. D. Albro Company to cancel a contract for the purchase of stock. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

James R. Burnet, for appellant.
Ernest Hall, for respondent.

INGRAHAM, J. The defendant is a foreign corporation, organized under the laws of the state of Ohio. In April, 1899, and prior thereto, the defendant was engaged in the business of dealer in lumber in the city of New York. The material facts, which are not seriously disputed, are: That in April, 1899, the plaintiff held the defendant's note for $10,000 for money loaned, which was payable on demand, with interest at the rate of 6 per centum per annum. That the plaintiff wrote a letter to the defendant, asking for payment of $5,000 on account of this note. That in answer to this demand the plaintiff received a letter from the defendant corporation, signed by "E. D. Albro Company, W. H. Justice, Prest.," which was as follows:

"* * * In your recent letter to Mr. Justice you stated you would like to have say, $5,000 in cash. Our stockholders all agreed on one point and that is that we much prefer to pay the note in full and therefore we repeat that it would give us pleasure to hand you check for $10,000 at once if you so desire and we can arrange the interest due on our note for $10,000 by short time notes. As you mention, however, that $5,000 in cash is the sum you wish to get, we all join in the suggestion and it is simply a suggestion and offer to you in the true spirit of good advice for your interest and not for ours that we can and will pay you at once cash $5,000 and are willing to sell you five shares of the Company's stock at the par value of $1,000 per share and guarantee you on same a six per cent. dividend annually. Of course we expect to pay more dividend, but we are willing to guarantee a six per cent. dividend and will also agree, or Mr. McDougall and Mr. Justice will jointly agree, to buy the stock back from you at the end of two or three years at the same price per share you having a guarantee of six per cent. dividend in the meanwhile. * * * Please understand that we are not anxious to sell Albro Company stock but are willing to sell you five shares if you desire to purchase it on the basis mentioned. Our preference you understand is to pay the note in full $10,000 at once. * * *"

This letter was dated April 22, 1899, and about the 10th of May, 1899, Mr. Justice, the president of the company, called upon the plaintiff in New York City. Mr. Justice said that he had called to see the plaintiff in reference to the E. D. Albro Company's demand note which the plaintiff held, and referred to the letter of April 22d. He then told the plaintiff of the prosperity of the company, and that they had 10 years' good business before them, and that the company expected to pay 10 per cent., if not more. He then offered to the

86 N.Y.S.—10

plaintiff that, if the plaintiff would take the stock of the company, they would guaranty a dividend of 6 per cent. per annum in exchange for the note. The plaintiff asked him if that would be preferred stock, to which Justice answered that it would be stock guarantied by the Albro Company, which they had a right to do. The plaintiff replied that he did not care about buying stock, as he was well advanced in years, and would prefer to have the note go on as it was on the books, and, if they did not want to do that, they could pay the note in full in cash. To that Justice said that it was not convenient for them to pay cash on the note at that time, and the plaintiff said that he would think the matter over, and would see him again. The plaintiff, having confidence in Justice, and believing what he said, in a day or two afterwards called upon Justice at the office of the company in New York, when Justice asked the plaintiff what he had decided about taking stock. The plaintiff said, "No, I didn't see where I was going to be benefited by taking stock for my note, which was six per cent. per annum, and the stock wouldn't pay any more." Justice replied that this note was the only obligation of the kind that they had on their books, and they wanted to get it off their books as a liability. "He then said that the company would sell me eight shares of stock, and guaranty me a dividend of six per cent. per annum, payable quarterly, and the balance, $2,000, they would pay in cash in exchange for my demand note;" and that, in addition, they would give the plaintiff an additional advantage, and that was that the company would continue the interest on the note from that time—from the 1st of January to the 1st of July—and that the Albro Company had decided to pay dividends, to commence them on the 1st of July, 1899, and that, if he would decide then and there to take stock, he would get a dividend in July. The plaintiff said that he would accept his offer; that is, that he would accept eight shares of stock at par with their guaranty of 6 per cent. per annum, payable quarterly, and the balance, $2,000, to be paid in cash, in exchange for the note. As a result of this conversation, early in June, the plaintiff received from Justice eight shares of the capital stock of the defendant corporation at the par value of $1,000 each, and with it the following letter:

"New York, May 13, 1899.

"Mr. Jas. S. McVity—Dear Sir: You hold the note of The E. D. Albro Co. for $10,000.00 bearing Int. at 6%. If as proposed you will buy 8 shares of The E. D. Albro Co. stock we will guarantee you a 6% dividend on same payable quarterly and the remaining $2,000.00 we can arrange as you may desire.

"This is the arrangement proposed by Mr. McDougall, and he and Mr. Justice will agree to purchase back the stock at par 2 to 3 years if you wish to sell, and you are guaranteed a dividend of 6% per annum in the meanwhile.

"Yours truly,            The E. D. Albro Co.
                              "W. H. Justice, Prest."

The certificate for eight shares of stock and the letter accompanying it were delivered to the plaintiff by the president of the company. At the time it was delivered Justice told the plaintiff that he would like to continue the $2,000 as an account until the 1st of January, 1900, and Justice, on behalf of the company, then borrowed an additional $1,000 in cash from the plaintiff as a loan, and gave a note of

the corporation for $3,000, which the plaintiff accepted, and delivered the note for $10,000 to the defendant. Thereupon, and down to December 31st, the defendant paid dividends of 6 per cent. upon the stock owned by the plaintiff, and also made various payments on account of the note for $3,000, until at the commencement of the action there was due upon the note for $3,000 $400, with interest from July 1, 1902. On December 3, 1901, the plaintiff received from the defendant the following letter, dated Cincinnati, Ohio, December 3, 1901:

"Dear Sir: * * * As to the dividends, some of our stockholders have entered a protest and this protest will have to be heeded, because it is an ultra vires act and beyond the power of any officer of this Company to pay dividends when the Company is not earning them."

In reply to this letter the plaintiff, on December 15, 1901, wrote a letter as follows:

"The E. D. Albro Company—Gentlemen: * * * I note what you say (and which has been before intimated by you), that it was beyond the power of the Company to issue stock with guarantee of dividend. This transaction was entered into at the request of the Company, and it was supposed at the time that it was a good thing both for the Company and myself, and I supposed it was done on the advice of the Company's legal adviser. I had no idea at the time of the transaction that it was unlawful, and of course I ought not to hold you to it if it was, and have no desire to do so. Will you kindly advise me if it is the judgment of the Company and its present legal adviser that it was beyond the power of the Company to issue the stock with the guarantee of dividend which I hold. I want my affairs with the Company adjusted as far as possible without friction, and if your Company holds that it was beyond its power to issue the stock, with the guarantee of dividends which I hold, I offer to return the stock to you, properly endorsed for surrender or transfer, together with the guarantee executed by the Company at the time of the issue of the stock, you to return me the Company's note for $10,000, which I gave up when the stock and guarantee was given to me, on which you may endorse payment of interest (which I received under the agreement as dividends), to October 1st, 1901, together with payment of Two thousand dollars on account of principal.

"Yours truly,                              James S. McVity."

This letter does not seem to have been answered by the defendant, when the plaintiff, on January 10, 1902, sent a copy of the letter to the defendant, with a request for an immediate reply. In answer to that, on January 16, 1902, the plaintiff received a letter from the legal adviser of the defendant, dated Cincinnati, January 16, 1902, which stated that in the opinion of the writers the alleged guaranty of dividend upon the stock referred to was made without the authority of the company itself.

"Furthermore, even if the Company had authorized the guarantee, it would have been ultra vires, because a corporation has no right to guarantee to an individual stockholder the dividend upon his stock. This being the case, the Company as now constituted cannot now undertake to be responsible for the unauthorized act of some former management of the Company, and it is not in a position to receive from you the stock, nor to give you its note for $10,000 as you request. You could have known, as a matter of law, at the time, that the Company could not make such a stipulation. Having taken the stock, under the circumstances set forth, you are not entitled to return it to the Company, and receive therefor the Company's note."

The plaintiff testified that he did not at any time know that it was forbidden in Ohio to pay more than the company earned. For

the defendant, Mr. Cassatt, a member of the bar of the state of Ohio, was called as a witness, and testified that he was familiar with the law of Ohio relating to corporations; that there was no authority under the law of that state for a corporation to guaranty a dividend upon its capital stock; that by the law of Ohio dividends can be declared by the company upon only what are called the "surplus profits" of the company; and certain statutes of the state of Ohio relating to the powers of corporations were introduced in evidence. By these statutes it was made unlawful for the directors of any corporation organized under the laws of that state to make dividends, except upon the surplus profits arising from the business of the corporation. Both the plaintiff and the defendant then asked for the direction of a verdict, whereupon the court granted the motion of the plaintiff, and directed a verdict in favor of the plaintiff for the amount due upon the note of $10,000, and from the judgment entered upon that verdict the defendant appeals.

Each of the parties asked for the direction of a verdict, and, there being no application to submit any question to the jury, the question presented is whether, upon these facts, the plaintiff was entitled to a verdict. This corporation, being organized under the laws of the state of Ohio, was subject to the law of that state, and had such power as that state had granted to it. Whether or not it was authorized to issue stock with a guaranty of dividends, which would make it entitled to dividends in preference to other stock of the corporation, was a question to be determined by the laws of Ohio, and as to the law of that state the plaintiff, a resident of New York, was not chargeable with knowledge. There is nothing that would restrict the power of the Legislature of the state of Ohio to confer upon a corporation organized under its authority power to guaranty dividends upon the stock of the company, even though such dividends would be payable out of the capital of the company, as distinguished from its profits or surplus earnings. Notwithstanding the fact that the defendant had expressed to the plaintiff a great desire to pay this note in cash, it endeavored to induce the plaintiff to make some terms with the company by which a payment could be prevented. It accomplished that result by inducing the plaintiff to surrender the note in return for shares of the stock of the company, on which the company would guaranty the payment of a dividend of 6 per cent., and upon the representation by the defendant's president that the defendant had a right to issue its stock and guaranty the payment of the dividends.

The plaintiff testified, and it was not disputed, that: "I then asked him [the president] if that would be preferred stock. He answered me by saying it would be stock guarantied by the Albro Co., which they [Albro Co.] had a right to do." Here was a distinct representation by the president of the defendant, to induce the plaintiff to accept the stock of the corporation, that the defendant had a right to make such a guaranty; and that right depended upon the law of the state of Ohio, with knowledge of which the plaintiff was not chargeable. The plaintiff expressly swears that he relied upon this statement of the president, and that he had no knowledge of

the fact that such an arrangement was in violation of the laws of Ohio. The defendant thus accepted a surrender of the plaintiff's note, based upon a delivery of the stock with the guaranty of the defendant that it would pay dividends upon the stock at the rate of 6 per cent. per annum; and that guaranty was faithfully observed by the defendant down to the end of the year 1901, when, for the first time, the defendant informed the plaintiff that the agreement of guaranty was invalid by the law of the state of Ohio, and refused to comply with it; that the representations made by the defendant's president, and upon which it obtained the note of the defendant which was held by the plaintiff, were false; that the guaranty was not a legal obligation of the company, for which he acted; and that the plaintiff was not entitled to receive the dividends which the corporation had guarantied, upon the basis of which guaranty the plaintiff had surrendered this obligation of the defendant. I think it clear that under this condition the plaintiff was authorized to rescind this sale of the stock and to receive back the obligation of the company upon the delivery to the company of the stock that he had received. The plaintiff was not a lawyer. He had been for some time in the employ of the defendant. He had loaned his money to the defendant, relying upon its obligation to repay it to him upon demand. He had been induced to surrender that obligation of the defendant upon the distinct representation by the defendant's president that the stock that they had offered to sell him was stock of the company, with a guaranty of a dividend of 6 per cent., and that the corporation had power to issue stock with such a guaranty; and, relying upon this representation, the plaintiff accepted the stock and delivered up the obligation of the company that he held. What the defendant offered to give to the plaintiff, and what the plaintiff understood he was to receive from the defendant, was stock of the defendant dividends of which were guarantied. The defendant delivered the stock and what purported to be such a guaranty. The arrangement was for the benefit of the defendant, suggested by its president, and accepted by the plaintiff as the defendant's offer.

It is opposed to the established principles of law that the defendant should be allowed to repudiate its obligation upon the ground that the obligation that it assumed to the plaintiff was ultra vires, and at the same time retain the consideration that it had received for giving this void guaranty. This question is very satisfactorily treated in Pullman Palace Car Co. v. Central Trans. Co., 171 U. S. 139, 18 Sup. Ct. 808, 43 L. Ed. 108, and it was there expressly held that upon disaffirmance by a corporation of an act which is ultra vires, the corporation must restore the other party to his former condition as far as possible upon the disaffirmance of a void contract, and return all property that it has received as a consideration for that contract or its value. In Central Transp. Co. v. Pullman Palace Car Co., 139 U. S. 39, 11 Sup. Ct. 478, 35 L. Ed. 55, Mr. Justice Gray, in delivering the opinion of the court, said:

"A contract ultra vires, not being in itself immoral, but because the corporation is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice to the par-

ties so far as could be done consistently with adherence to law, by permitting property or money parted with on the faith of the unlawful contract to be recovered back, or compensation made."

It has been settled in this state that a corporation cannot avail itself of the defense of ultra vires when the contract has been in good faith fully performed by the other party and the corporation has had the benefit of the performance and of the contract; that "when it [the contract] becomes executed by the other party it [the corporation] is estopped from asserting its own wrong, and cannot be excused from payment upon the plea that the contract was beyond its power." Vought v. Eastern Building & Loan Ass'n, 172 N. Y. 508, 65 N. E. 496. But when the corporation expressly repudiated its agreement upon which it had obtained this plaintiff's property, and as a basis for such repudiation proved that the act was ultra vires, and prohibited by the statutes of the state from which it had derived its right to exist, the other party to the contract certainly had the right to rescind the whole transaction, and the defendant was then bound to restore the plaintiff to the same condition that he was in when the void contract was executed.

There is no justification in the evidence for the statement that this guaranty of dividends was not the substantial inducement under which the plaintiff accepted these shares of stock in discharge of the defendant's indebtedness to him; and, having acted upon the representations of the defendant's president that he was acting for the corporation, and that the corporation had the power to make such a guaranty, the defendant corporation cannot retain the benefit of the transaction, and hold its obligation which it had obtained from the plaintiff, and repudiate the authority of the plaintiff to make, on behalf of the corporation, such a contract. By accepting and retaining the note held by the plaintiff, the corporation ratified the act of its president in making the contract with the plaintiff, and, but for the fact that the guaranty is prohibited by the laws of the state of Ohio, the guaranty would be a perfect valid obligation of the defendant, which it, while retaining the benefits, could not repudiate upon the ground that the defendant's president had no authority to make it. It is sound law, as well as sound morals, that a party to a contract cannot repudiate the contract and his obligations under it, and at the same time retain the consideration that he has received for making the repudiated promise; and whether the promise is repudiated because it was made by an agent without authority, or because it was ultra vires, or beyond the power of the party making it, or for any other reason, when the obligation upon one party is repudiated, the other party has the right to receive back the consideration which it has paid for the repudiated contract or repudiated obligation. This general rule applies with greater force where the innocent party who has paid his money or property or delivered his property based upon the invalid promise has been induced to part with money and accept the promise upon the distinct representation of the promisor that the obligation was valid, and that the promisor was authorized to make it. All of these facts appear in this case. This defendant corporation stands in a position of a corporation accepting from the plaintiff a

discharge of its admitted obligation based upon a promise to pay 6 per cent. dividends upon the stock transferred to the plaintiff in satisfaction of that obligation. It repudiates that obligation, and then seeks to retain its obligation which the plaintiff had delivered to it based upon that promise. Certainly no corporation or individual can retain the benefit received on account of a void obligation while repudiating the obligation.

I think that the judgment and order should be affirmed, with costs.

PATTERSON and HATCH, JJ., concur.

Two causes of action are alleged in the complaint, but the appeal only involves a consideration of the first, which is for the recovery of $8,000, a balance alleged to be due and owing on a demand note for $10,000 given by the defendant to the plaintiff on the 1st day of January, 1897. The plaintiff had for several years been in the employ of the defendant as a traveling salesman, and the note was given for a balance due for services and moneys loaned. It is alleged in the complaint that the note was surrendered to the defendant on the 13th day of May, 1899, at its request, and that the plaintiff was induced by the president of the defendant to accept therefor eight shares of the capital stock of the defendant of the par value of $1,000 each, with a guaranty in writing that the defendant would pay 6 per cent. dividends on the stock annually, and a new note of the defendant for $3,000, representing $2,000 of the indebtedness covered by the $10,000 note, and a further indebtedness for a subsequent loan of $1,000; that the president of the defendant represented that the stock had been lawfully issued,. and that "the defendant had power and authority, by its charter, to issue such stock and guaranty dividends thereon," and that the plaintiff believed these representations and relied thereon; that the defendant paid dividends on the stock at the rate of 6 per cent. per annum until the 1st day of October, 1901, and the further sum of $20, and then declined to pay dividends on the grounds that the earnings of the company would not justify it, and that the guaranty was void; that the plaintiff tendered a return of the stock, and demanded a return of the note for $10,000, and offered to credit defendant thereon the $2,000 represented by the other note, and, as interest, the amounts paid as dividends; and that the note for $10,000 is not now in the possession of the plaintiff. The defendant, in its answer, denies the guaranty, and denies that the president of the defendant had authority to execute the same, and alleges that the guaranty, if executed, was void, and that plaintiff had either actual or constructive notice thereof. The other material allegations of the complaint are admitted.

The defendant was incorporated on the 8th day of February, 1878, pursuant to an act of the Legislature of the state of Ohio passed on the 1st day of May, 1852, and the acts supplementary 'and amendatory thereto. The purpose of its incorporation, as stated in the certificate, was "buying and selling foreign and domestic woods in the log or otherwise, and of manufacturing the same into planks, boards and veneers, and of disposing of the same, and doing a general lumber business, and holding such real and personal estate as may be deemed necessary to carry into effect the object of the incorporation." It was stipulated upon the trial that the general statutes of Ohio show that no corporation incorporated under the laws of that state since the 1st of May, 1852, "has had at any time power to guaranty dividends on its capital stock." It also appears by those statutes that dividends may be lawfully paid only from the surplus profits arising from the business of the corporation, and the method of calculating profits is therein regulated. The plaintiff testified that in April, 1899, he wrote the defendant asking payment of $5,000 on its note for $10,000 which he held; that on the 22d day of the same month he received a letter in the name of the company, signed by its president, saying that the stockholders of the company preferred to pay the note in full, and that the company was ready to hand him a check for the face of the note, but, since he only desired $5,000, the stockholders joined in the suggestion for his interest, and not for theirs, that he take $5,000 in cash, and purchase five shares

of the company's stock upon which 6 per cent. dividends annually would be
guarantied, and that the company would agree, or two of its stockholders
named in the letter would jointly agree, to buy his stock at the end of three
years at the same price, although the company would prefer to pay the rents
in cash, and was not anxious to sell stock, as it was expected that greater
dividends than 6 per cent. would be paid; that about the 10th of May there-
after the president of the company called at the plaintiff's house with refer-
ence to the note and correspondence, and spoke of the prosperity of the com-
pany, and of its good prospects, saying that it expected to pay 10 per cent.
dividends, if not more, and that the stockholders with whom plaintiff was
acquainted were all anxious that he should take stock, and "offered to me
that, if I would take stock of the Albro Co., they would guaranty a dividend
of six·per cent. per annum in exchange for my note. I then asked if that
would be preferred stock. He answered me by saying that it would be stock
guarantied by the Albro Co., which they had a right to do"; that plaintiff
replied that he did not desire to buy stock, and would prefer to let the note
run, or have it paid in full; that the president of the company then said it
was not convenient to pay cash on the note at that time, to which plaintiff
replied that he would think the matter over, and see the president of the
company again; that he was well acquainted with the president of the de-
fendant, and believed all that he said; that he had another conversation with
the president of the company a day or two later; that the president then in-
formed him that this was the only note of the kind outstanding on the books
of the company, and that they wished to get it off the books as a liability, and
that the company would sell to him eight shares of stock and guaranty a divi-
dend of 6 per cent. per annum, payable quarterly, and the balance of $2,000
would be paid in cash in exchange for the $10,000 note, and, as an additional
advantage to him, would pay interest on the note to the 1st of July, and would
pay the first dividend on the stock on the 1st of July; that plaintiff then in-
formed the president that he would accept the offer; that about the first or
second week in June the stock was delivered to the plaintiff by the president
of the company, together with the following letter:

"New York, May 13, 1899.

"Mr. Jas. S. McVity—Dear Sir: You hold the note of The E. D. Albro Co.
for $10,000.00 bearing Int. at 6%. If as proposed you will buy 8 shares of
The E. D. Albro Co. stock we will guarantee you a 6% dividend on same pay-
able quarterly and the remaining $2,000.00 we can arrange as you may desire.

"This is the arrangement proposed by Mr. McDougall, and he and Mr. Jus-
tice will agree to purchase back the stock at par within 2 to 3 years if you
wish to sell, and you are guaranteed a dividend of 6% per annum in the
meanwhile.      Yours truly,          The E. D. Albro Co.
"W. H. Justice, Prest."

The plaintiff received dividends on the stock down to the 1st day of Oc-
tober, 1901, as alleged. About that time the management of the company
changed, and the condition of its business did not justify the payment of
dividends thereafter. On the 3d day of December, 1901, the plaintiff received
a letter from the company, written by its secretary, inclosing a draft to apply
on the $3,000 note of the company which he then held, and informing him
that some of the stockholders had entered a protest against the payment of
dividends, and that, as the company was not earning dividends, it would be
an ultra vires act to pay them, and the protest would have to be heeded. On
the 15th of the same month he wrote the company, saying that he was not
aware at the time that the agreement to pay dividends was unlawful, but that,
if it was, he ought not to hold the company, and had no desire to do so; that
if, in the judgment of the company and its legal advisers, it was beyond its
power to issue the stock with the guaranty, he offered to return the stock
properly indorsed for surrender or transfer, and the guaranty also, in exchange
for the notes which he surrendered to the company on which he authorized
the indorsement of payments, as interest, of the amounts he had received as
dividends, together with $2,000 on account of the principal. On the following
day the attorneys for the company, to whom the plaintiff's letter had been
referred, wrote the plaintiff, saying that the guaranty was made without the

authority of the company, but that it would have been ultra vires even if authorized, and that the company could not receive back the stock or return the note. It does not otherwise appear that the company authorized its attorneys to write this letter. The plaintiff then brought this action.

LAUGHLIN, J. (dissenting). I am of opinion that the action cannot be maintained, and that the judgment in favor of plaintiff should be reversed. The theory of the plaintiff seems to be that the guaranty of dividends was void, and that it was such an essential part of the consideration that, when the company defaulted in paying dividends, he was at liberty to rescind the contract by which he received the stock, and to recover upon the original note which he had surrendered to the defendant, and which was in its possession. There was no allegation or proof of fraud or mutual mistake, and the plaintiff does not ask to have the contract set aside upon either ground, but claims the right of his volition, and without the consent of the defendant, to rescind it. The contract was fully performed on the part of the defendant, unless it can be said that it undertook to give a valid guaranty, which manifestly it could not do. The defendant did all that it agreed to do at the time, and paid the dividends according to the guaranty for more than two years. During all that time the plaintiff was a stockholder of record of the defendant company, and it was not in default. It may be assumed that others became stockholders, and third parties dealt with the company on the faith of its financial condition with this obligation to the extent of $8,000 apparently canceled. After this lapse of time upon the failure of the company to pay a dividend, which, according to the guaranty. did not become due for more than two and one-half years after the agreement had become consummated, the plaintiff asserts the right to terminate of his own volition all his liability as a stockholder, and to reinstate the company's original indebtedness to him. This, I think, he may not do. Doubtless the plaintiff relied on this guaranty, and, if he knew it was invalid, perhaps he would not have surrendered the note and have accepted the stock; but, whether so or not, it was not a conditional sale. The sale was consummated. The guaranty, if valid, was a covenant for the performance of obligations at future times, and its breach was therefore a breach of a condition subsequent, and would afford no ground for rescinding the purchase of the stock. De Kay v. Bliss et al., 120 N. Y. 91, 24 N. E. 300; Lamson Consolidated Store Service Co. v. Coyngham (N. Y. Com. Pl.) 32 N. Y. Supp. 129; Fairbank Canning Co. v. Metzgar et al., 118 N. Y. 260, 23 N. E. 372, 16 Am. St. Rep. 753; Goldsborough v. Orr, 8 Wheat. 217, 5 L. Ed. 600; Railroad v. Parks, 86 Tenn. 554, 8 S. W. 842; Morrow v. Iron & Steel Co., 87 Tenn. 262, 10 S. W. 495, 3 L. R. A. 37, 10 Am. St. Rep. 658; Hoffman v. King, 70 Wis. 372, 36 N. W. 25; Tufts v. Wainfeld, 88 Wis. 647, 60 N. W. 992; Patterson v. Donner, 48 Cal. 369. Moreover, I think that, if this guaranty is to be construed as an absolute undertaking on the part of the company to pay dividends regardless of whether they are earned or not, the plaintiff is chargeable with knowledge of its invalidity, and cannot rescind upon that ground. Such a contract would be contrary to public policy, as it would be in fraud of the rights of creditors and of

the stockholders, and it is not conceivable that it would be valid anywhere. Lockhart v. Van Alstine, 31 Mich. 76, 18 Am. Rep. 156; Miller v. Ratterman, 47 Ohio St. 141, 24 N. E. 496. Furthermore, I think the principle that all persons dealing with a corporation are chargeable with notice of its corporate powers, and that its charter, being the law of its existence, is carried wherever the corporation transacts business, is certainly applicable to the purchase of the capital stock of a corporation wherever made. Morawetz on Corporations (2d Ed.) § 96; Oil City Land & Improvement Co. v. Porter, 99 Ky. 254, 35 S. W. 643. In an action in the courts of this state between individuals and a foreign corporation which pleaded that the contract upon which the action was based was ultra vires, the Court of Appeals applied this rule. Jamieson et al. v. Citizens' Savings Bank, 122 N. Y. 135, 25 N. E. 264, 9 L. R. A. 708, 19 Am. St. Rep. 482. The plaintiff intended to become a stockholder of the corporation. He obtained all the stock that he bargained for, and there is no question but that it is valid. The corporation of which he was becoming a stockholder at most agreed to pay 6 per cent. dividend upon the stock. As has been observed, there is no question of bad faith. Undoubtedly, this agreement was made in the confident expectation that the earnings would justify the payment of such dividends; but, if it was intended to undertake absolutely for the payment of the dividends regardless of the earnings of the corporation, this at most was an innocent misapprehension on the part of directors or managing officers as to their authority. Public policy requires, I think, that in these circumstances a purchaser of stock should not be at liberty years later to rescind his contract because the guaranty was an ultra vires contract. It is just and necessary to the protection of the rights of others that knowledge of the invalidity of the contract should be imputed to him.

There is room for argument that the true construction of this guaranty does not render it void, and there is authority for the construction that it was an undertaking to pay dividends on this stock, as might be lawfully done, from the earnings, instead of accumulating a surplus, or in preference to other stockholders who had knowledge of the plaintiff's rights (Lockhart v. Van Alstine, supra); but this is not an action upon the guaranty, and that question cannot be decided now.

The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

VAN BRUNT, P. J., concurs.