CHARLES R. OLIVER

*v.*

THE RAILWAY ICE COMPANY et al.

[Filed February 26th, 1903.]

1. A contract of sale to a corporation of shares of its stock by a director present at the meeting of the board at which the sale was sanctioned is not binding as a valid obligation. But if the stock be retained or its value changed by action of the company so that it cannot be tendered back, though in the same condition, the company will be obliged to pay what it was reasonably worth.

2. A board of directors, the majority of which were the members of the board which authorized the illegal contract, cannot ratify it.

3. Silence of the stockholders of a corporation for two years, with knowledge of the illegal contract, is not a ratification thereof.

*Mr. Nicholas C. J. English,* for the complainant.

*Mr. Frank Bergen,* for the defendants.

STEVENS, V. C.

The bill is filed to foreclose a mortgage made on August 31st, A. D. 1899, by the Rahway Ice Company to complainant to secure the sum of $12,000. One year thereafter the mortgagor paid the

Oliver v. Rahway Ice Co.

principal sum of $3,000, with a year's interest. The complainant, Oliver, and his brother had been stockholders of the company, together holding three hundred shares of the par value of $100 each. On these shares $15,000 had been paid into the treasury of the company, and on the day above named the company had agreed to take them for what had been thus paid. Of this price $3,000 was paid in cash and the balance was secured by the above-mentioned mortgage. The main defence was that the transaction was *ultra vires* and void. Since the decision by the supreme court in *Chapman* v. *Ironclad Rheostat Co., 33 Vr. 497,* approved by the court of errors and appeals in *Berger* v. *United States Steel Corporation, N. J. L. J. 331 (1902),* it is the settled law of this state that corporations may purchase shares of their own capital stock whenever such purchase is required for legitimate corporate purposes. I do not suppose that this decision goes the length of authorizing a corporation to purchase and pay for its own stock if such purchase and payment will disable it from paying its debt in full, or of authorizing a corporation to contract with one or more of its shareholders to buy shares and so convert them into creditors entitled to come in on an equality with other creditors, if the assets be at the time insufficient to pay all the creditors in full. But the evidence does not bring the case in hand under either of these categories, and so nothing is decided in reference to them. Under the proofs, the transaction is not, therefore, *ultra vires.* It seems to me, however, to be objectionable on another ground. It comes within the principle of *Gardner* v. *Butler, 3 Stew. Eq. 702.* Oliver and his brother were directors present at the meeting of the board at which the sale of the stock was sanctioned. Speaking of a case thus circumstanced, Mr. Justice Van Syckel, in the case cited, says: "The rule is that the trustee cannot fortify himself by a contract which he makes with himself or for his own benefit and set it up either at law or in equity as a valid obligation. It is of no binding force as a contract, and the *cestui que trust* may repudiate it at will. But while the express undertaking is without legal force, the directors of a company have a right to serve it in the capacity of officers, agents or employes, and for such services the law will

enable them to recover a just and reasonable compensation. * * * No claim which they may make against their company can acquire any support from the fact that they have expressly sanctioned it. It must rest exclusively upon its fairness and justice and be enforced upon the *quantum meruit."* Referring to the case of the *Aberdeen Railway Co.* v. *Blaikie,* he says, further on: "If the action (in that case) had been brought to recover for the chairs which had been delivered and accepted, I apprehend it would not have been held in any court that the company could have retained the property and refused to pay for it, not the contract price, but what it was reasonably worth. * * * The same principle must apply whether it is property conveyed or services rendered to the company. The cupidity and avarice of the trustee is guarded against by giving the *cestui que trust* the right to repudiate the contract at all times, where it is executory, and to allow simply a just remuneration without reference to the contract price, where it is executed." In the *Berger Case,* stock is said to have been put by our statute upon the footing of other property, and so the rule laid down in the case of *Gardner* v. *Butler* is directly applicable. The company must pay for it, not the contract price, but what, at the time of the sale, it was reasonably worth.

It was argued for complainant that there was ratification of the contract as made, first, by payment on account, and secondly, by an express reference to the mortgage as "due" in a subsequent mortgage made by the company to a trustee to secure certain bonds.

The payment on account may as well be referred to an implied indebtedness on the *quantum valebat* as to an express indebtedness on the contract. As to the clause in the second mortgage, the evidence does not show by whose direction it was inserted, and it appears to be rather the statement of a seeming fact than the conscious validation of an illegal agreement. If it was inserted by direction of the board of directors, then, so far as appears, a majority of the board which directed it may have consisted of the same persons who authorized the purchase. That majority could not, consciously or unconsciously, ratify its own illegal act. The ratification must necessarily come from

the principal, and not from the unauthorized agent. Here the principal is the corporation itself—the whole body of the stockholders. It is not pretended that this body as such, or duly authorized representatives of this body, ratified the transaction otherwise than by its silence; and this silence has not been sufficiently long continued to be evidence of acquiescence, and hence of ratification, assuming, notwithstanding the language of the court in the *Gardner-Butler Case,* that the ordinary rule relating to ratification by acquiescence is applicable to cases like the present. Only two years and a little over a month intervened between the making of the mortgage and the bringing of this suit. In the *Gardner-Butler Case* the stockholders, with full knowledge of the facts (see chancellor's opinion, *3 Stew Eq. 710*), remained silent from January, 1868, to May, 1871, and although the chancellor called attention to the delay and laid stress upon it, it was not considered by the court of errors to be material.

There must be a reference to ascertain the value of the stock at the time it was purchased. I do not think the company could with any more reason tender it back now, with another mortgage put upon the property, than the Aberdeen company, in the case mentioned by Mr. Justice Van Syckel, could have tendered back the chairs after using them.