ROBERT H. McCARTER, attorney-general,

*v.*

PITMAN, GLASSBORO AND CLAYTON GAS COMPANY et al.

[Submitted February 1st, 1908. Decided February 7th, 1908.]

1. An information filed on behalf of the state by the attorney-general on the relation of an individual to set aside an alleged illegal issue by a gas company of stock for property purchased in excess of the value of the property, need not disclose any special interest on the part of relator.

2. General Corporation act (*P. L. 1896 p. 294 § 50*) authorizing gas companies to issue their capital stock for property purchased from or labor supplied by a construction company to the amount of the value of the property or services so received, requires that the value received by the company shall be equal to the amount of stock issued for it.

3. General Corporation act (*P. L. 1896 p. 293 § 49*) provides that any corporation formed under the act may purchase property necessary for its business, and issue stock to the amount of the value thereof in payment therefor; and that, in the absence of actual fraud in the transaction, the judgment of the directors as to the value of the property purchased shall be conclusive. Section 50 (*p. 294*) authorizes gas, &c., companies to issue their capital stock for property purchased from or labor supplied by a construction company "to the amount of the value" of the property or services so received.—*Held*, that the effect of section 50 must be essentially the same as that of section 49, and, where a transaction whereby stock and bonds are issued in payment for property or services is fully completed and the stock and bonds have been delivered, actual fraud must be found to have existed to justify the setting aside of the issue.

4. Though a court of equity cannot interfere at the instance of the state to prevent an usurpation of corporate authority by a private corporation, a *quasi* public corporation, entrusted by the state with public powers for the public good, must perform its duties with due regard to its trust, and equity will not permit an *ultra vires* act on the part of such a corporation which will impair its owners' ability to properly discharge its public duties, and in such cases the state is a proper party to enjoin the threatened act.

5. General Corporation act (*P. L. 1896 p. 294 § 50*) authorizes gas companies and other *quasi* public corporations to issue stock for property purchased to the amount of the value of the property so re-

ceived.—*Held*, that a court of equity will entertain a proceeding by the state to set aside an issue by a gas company of stock for property purchased in excess of the value of the property.

6. An averment that complainant is informed and believes, and therefore avers, that defendant corporation in violation of law issued stock to another defendant in payment for property purchased in excess of the value of the property, was a positive averment of fact, and admitted by demurrer.

7. General Corporation act (*P. L. 1896 p. 293 § 49*) provides that any corporation formed under the act may purchase property necessary for its business, and issue stock to the amount of the value thereof in payment, and that, in the absence of actual fraud, the judgment of the directors as to the value shall be conclusive. Section 50 (*p. 294*) authorizes gas companies to issue capital stock for property purchased from or labor supplied by a construction company to the amount of the value of the property or services so received.—*Held*, that in an information charging that defendant gas company illegally issued to defendant construction company in payment for a plant erected by the latter $300,000 in bonds and stock, and seeking to set aside the issue, the mere averment that the plant is not now worth more than $75,000 was insufficient to warrant the conclusion that the construction contract was fraudulently made; it not appearing when the plant was constructed or when the agreement for its construction was made.

8. The information further averred that the persons owning the stock in and controlling the construction company are the persons who created and have always controlled the stock and policy of the gas company, and have elected the directors and officers of such company "who are practically the same persons" as are the officers of the construction company.— *Held*, that, in the absence of any averment that the conditions referred to in any way entered into or influenced the terms of the construction contract, and especially in the absence of an averment that any member of the board of directors of either company was a member of the board of directors of the other company when the contract was made, the information was insufficient.

9. The validity of stock or bonds issued by a gas company is not affected by the failure of the company to file, as required by Gas act (*Gen. Stat. p. 1610 § 12*), a certificate stating the amount of capital stock fixed and paid in.

10. An information charging a corporation with failing to comply with the provisions of an act must allege that the transaction complained of occurred after the act took effect.

11. Where an information on behalf of the state sought to set aside stock and bonds issued by a gas company as a violation of law, and also to declare void a mortgage by the company on its real estate to a foreign corporation as trustee to secure payment of the bonds, the court acquired jurisdiction over such foreign corporation through substituted service of process.

On demurrers and plea to an information filed by the attorney-general to set aside certain stock and bonds issued by defendant gas company.

The information is filed on behalf of the state by its attorney-general on relation of the Millville Improvement Company. The defendants are the Pitman, Glassboro and Clayton Gas Company, a corporation of this state, organized under the Gas act and now engaged in supplying gas to consumers, the Union Railway Supply Company, a corporation of this state operating as a construction company, and the Franklin Trust Company, a corporation of Pennsylvania, the latter company being the trustee in a mortgage executed by defendant gas company. The information seeks to have declared fraudulent and void certain stock and mortgage bonds issued by defendant gas company to defendant construction company as the consideration for the erection of the plant of the gas company by the construction company, and to have the mortgage securing the bonds declared void. Discovery is also sought. Demurrers are filed by the Pitman, Glassboro and Clayton Gas Company, and the Union Railway and Supply Company, and a plea to the jurisdiction is filed by the Franklin Trust Company.

*Mr. Louis H. Miller* and *Messrs. Gaskill & Gaskill,* for the informant.

*Messrs. French & Richards* and *Messrs. Berry & Riggins,* for the defendants.

LEAMING, V. C.

It is urged by demurrant Pitman, Glassboro and Clayton Gas Company that the information fails to disclose any special interest upon the part of relator. I think it unnecessary. *Grey v. Greenville and Hudson Railway Co., 59 N. J. Eq. (14 Dick.) 372, 373.*

It is further urged by the same demurrant that this court is without jurisdiction; that the remedy of the state in cases of this nature is at law. The information claims that the stock

17

and bonds of the gas company were issued to the construction company for more in amount than the real value of the property received. It is asserted that $150,000 in stock and a like amount in bonds were issued to the construction company in payment for what is now worth not more than $75,000. Section 50 of the General Corporation act (*P. L. 1896 p. 294*) authorizes gas companies to issue their capital stock for property purchased from or labor supplied by a construction company "to the amount of the value" of the property or services so received. This section clearly requires that the value received by the company shall be equal to the amount of stock issued for it. If $150,000 in stock was issued in payment for but $75,000 of value received, the act was clearly unauthorized by the section of the statute referred to, irrespective of the additional fact that a like amount of bonds was also issued for the same work. The effect of similar legislation (section 49 of the same act) has been clearly defined in *Donald* v. *American Smelting Co., 62 N. J. Eq.* (*17 Dick.*) *729*. It is there held that before the transaction has reached completion, full judicial scrutiny should be exercised to guard against a violation of the statutory requirement of full value, but after the property has been purchased and the stock issued "nothing short of actual fraud in the transaction can impair the rights of the holder to hold his stock as full-paid stock, free from other calls." The same view is there taken as to the effect of that statute before the provision was added touching the conclusive force of the judgment of the board of directors as to values. *Bickley* v. *Schlag, 46 N. J. Eq.* (*1 Dick.*) *533*, is clearly to that effect The effect of the provisions of section 50 must, therefore, be here treated as essentially the same as that of the provisions of section 49. In the present case the transaction having been fully completed and the stock and bonds now in question having been issued and delivered, actual fraud must be found to have existed in the transaction to justify relief.

Assuming actual fraud to be sufficiently averred by the information, can this court afford relief at the instance of the state? The remedy of the state in such cases by *quo warranto* is conceded, but the right of the state to relief in a court of

equity is challenged. It has been held that a court of equity cannot interfere, at the instance of the state, to prevent a bare usurpation of corporate authority by a private corporation. I understand the underlying principle of such cases to be that there is no reason why chancery should, at the instance of the state, enjoin or relieve against acts of a private corporation constituting a breach of the law in any case in which similar relief would not be granted against an individual. Whether this view should prevail in a case where the state seeks to enjoin or set aside an attempted fraudulent issue of stock by a private corporation does not concern us here, for the relation to a *quasi* public corporation to the state is peculiar to itself. A *quasi* public corporation which is entrusted by the state with public powers to be exercised for the public good must perform its duties with due regard to its trust, and I think it may be said to be well settled that equity will not permit an *ultra vires* act on the part of such a corporation which will operate to impair its ability to properly discharge its public duties, and that in such cases the state is a proper party to enjoin the threatened act. See *2 Morawetz on Priv. Corp. § 1043; Stockton* v. *Central Railroad Co., 50 N. J. Eq. (5 Dick.) 52, 78; Attorney-General* v. *American Tobacco Co., 55 N. J. Eq. (10 Dick.) 352, 365.* In the present case, defendant is a gas company incorporated under the Gas Company act of 1876. *Gen. Stat. p. 1608.* An examination of that act discloses many provisions touching the capitalization of gas companies which are apparently designed to prevent the possibility of any company organizing or operating under the act without a capital sufficient to enable it to properly discharge its public duties. The relation between the amount of capital and the population of the territory of operation is prescribed. The articles of incorporation cannot be filed until fifty per cent. of the stock is subscribed for in good faith and twenty per cent. paid in cash. All stock must be fully paid within eighteen months from the date of incorporation. Reports must be made and published showing the amount paid in and the amount of debts owing by the company. By section 50 of the General Corporation act, heretofore referred to, stock may be issued for property purchased "to the amount of the

value" received therefor. It seems to me to be apparent that when a corporation accepts the public powers conferred by this act and assumes the trust of discharging the public duties incident to those powers, it engages to comply with the provisions of the act which are designed to insure that it shall be able to efficiently perform its public functions, and that any failure upon the part of the corporation in that respect is not only a breach of its engagements to the state, but also operates as an impairment of its powers to discharge its public duties at the standard of efficiency prescribed by the legislature. Any act leading to these results is clearly an act which may be enjoined by the state.

The specific act against which relief is now sought is that of issuing stock for property to an amount in excess of the value of the property. As already stated the transaction has been consummated and the stock delivered. The company to whom the stock was issued and who now holds it is a party defendant. The court of errors and appeals having held, as hereinbefore stated, that a transaction thus completed can only be set aside in case of actual fraud, the question now arises whether the information sufficiently discloses such fraud. The material averments of the information touching the existence of fraud in the issuance of the stock and bonds will be found in paragraphs numbered four, five and six. An objection is made by demurrant that the averments of paragraph number four of the information are based on information and belief and therefore not admitted by the demurrer. It has been held that where the averment is that the complainant is informed and believes that certain things are true, the demurrer admits that complainant is so informed and does so believe, but not that the information is true. *Trimble* v. *American Sugar Refining Co., 61 N. J. Eq. (16 Dick.) 340, 346; Fletch. Eq. Pl. & Pr.* § *199.* But it is also held that where the averment is that "complainant is informed and believes, and therefore avers," the force of the expression is a direct and positive averment of the fact, and that the averment is not impaired by the statement that it is made on information and belief. This view is also especially favored when the facts so averred are peculiarly within the knowledge of de-

fendant and discovery is sought. See cases collected in note to *3 Encycl. Pl. & Pr. 363.* The averment here made is in the latter form and I shall treat it as a positive averment of fact. The paragraph referred to (paragraph 4) charges that defendant gas company issued to defendant construction company $150,000 in bonds and a like amount in stock as consideration for the construction of the gas plant and extensions, "and that the issue of said bonds and stock is in violation of the laws of this state as hereinafter more fully set forth." Paragraph 5 then avers:

"And informant further shows that a careful estimate and appraisal of the value of said plant and extensions shows the same to be worth a sum not exceeding $75.000; and that a great fraud and injustice is being perpetuated upon the public in soliciting subscriptions to said bonds and stock as well upon the taxpayers of the community in which said plant is located."

It will thus be seen that the essential averments of facts are that the gas company issued in payment for the plant $150,000 in bonds, and $150,000 in stock, and that a careful estimate and appraisal of the value of the plant shows it to be worth not more than $75,000. It is not shown when this estimate was made, but the language is in the present tense and the information was filed May 7th, 1907. It does not appear when the plant was constructed, or when the agreement for its construction was made, but the seventh paragraph of the information states that the bonds bear date May 1st, 1906, and that the mortgage securing the bonds was executed and delivered long before the completion of the plant and its extensions. It seems obvious that any forceful averment of overvaluation should have reference to the date when and the conditions under which the agreement for the construction of the plant was made. It is not averred that any combination was made between the construction company and the gas company whereby a fictitious valuation of the work to be performed was arrived at for the purpose of issuing bonds and stock in excess of the proper amount. The fraud, if any, must be inferred from the mere fact that the plant is not now worth more than $75,000. No relief can now be had unless the stock and bonds can be said to be

fraudulently in the hands of the construction company. As is said in *Bickley* v. *Schlag, supra,* in the absence of deceit, or some other corrupt constituent, the bargain between the parties cannot be disturbed, as the gas company and construction company stood upon the common footing of buyer and seller. It seems impossible to escape the conclusion that the mere averment that the plant is not now worth more than $75,000 is an insufficient averment to warrant the conclusion that the construction contract was in fact fraudulently made. If it appeared that at the time the construction contract was made, the parties to that contract knew or could have known that the work could have been completed for not to exceed $75,000, a very different question would be here presented, but the averment now under consideration falls far short of an averment of that fact. As is said in *1 Cook Corp.* § *35:*

"The property is not to be considered as overvalued merely because, subsequently, it turns out to be so. The various circumstances under which the valuation was made should be considered in determining the *bona fides* of the transaction."

I think it clear that these averments are insufficient to support a claim that the construction contract was fraudulently made. The sixth paragraph of the information avers that the persons owning the stock in and controlling the construction company are the persons who created and have always controlled the stock and policy of the gas company, and have elected the directors and officers of the gas company "who are practically the same persons" as are the officers of the construction company. In the absence of any specific averment that the conditions here referred to in any way entered into or influenced the terms of the construction contract as made, and especially in the absence of an averment that any member of the board of directors of either company was a member of the board of directors of the other company at the time the contract was made, I am unable to find in this paragraph any support to the claim for relief.

The eleventh paragraph of the information sets forth that no certificate has been filed by defendant gas company as required by the twelfth section of the Gas act. The penalty for the fail-

ure of a corporation to comply with the terms of that section is contained in the preceding section. It in no way affects the legality of the stock or bond issued. The same paragraph of the information alleges that the provisions of chapter 331 of the laws of 1906 (*P. L. 1906 p. 730*) have not been complied with by defendant gas company, but it nowhere definitely appears by the information that the transaction complained of occurred after September 1st, 1906, that date being the date on which the act referred to took effect.

The information also contains various averments touching misrepresentations now being made to the public by defendant construction company touching the stock and bonds of the gas company, which it now holds and seeks to sell. As has already been suggested, this court has no control at the instance of the state over such conduct upon the part of a private corporation, and these averments must be here treated as immaterial. The demurrer must be sustained.

The demurrer filed by defendant Union Railway and Supply Company raises substantially the same questions which have been considered, and must be sustained.

Franklin Trust Company, the trustee of the mortgage securing the bonds in question, has filed a plea to the jurisdiction, setting forth that it is a corporation of another state, and has transacted no business in this state, and that informant has procured an order of publication and served on defendant trust company a notice to plead pursuant to the rules of this court in proceedings against absent defendants.

The plea asserts that this court has no jurisdiction over defendant trust company as a foreign corporation. The sufficiency of this plea is to be determined. The information seeks, among other things, a decree declaring the mortgage to be void. The mortgaged land is in this state, and defendant trust company is the owner of the legal title in trust to secure the payment of the bonds. There can be no doubt of the power of this court to bring in a non-resident defendant by substituted service in a case of this nature. The *res* of the controversy is in this state and the case, so far as the validity of the mortgage is concerned, clearly falls within the well-established principles under which

fraudulent conveyances of real estate situated here are set aside through jurisdiction acquired oven non-resident owners of the legal title by means of substituted service of process. The plea, as such, must therefore be overruled. Any question as to the insufficiency of the averments of the information to warrant the relief sought must be raised by motion or demurrer.