The allegations of the bill, shortly stated, are that in December, 1931, the complainant purchased from one of the defendant's duly authorized agents thirty shares of its five and one-half per cent. preferred stock, at par, $100 per share, for $3,000, upon the false and fraudulent representation that the defendant would redeem the stock at par on demand; that such representation was made with the fraudulent intent to induce complainant to purchase the stock and relied upon by the complainant who had demanded that the defendant company redeem, which it has declined and refused to do.
In the second alternative count the complainant repeats all the above allegations and further alleges complete performance of his part of the agreement and failure and refusal of the defendant to perform, and tenders a return of the stock to the defendant.
The prayers are for an accounting and a decree for payment of the amount found due the complainant; or a decree compelling the defendant to specifically perform its agreement, and for general relief; but the form of the prayer for relief is not material, for if the facts pleaded and proved show the complainant entitled to equitable relief, appropriate relief will be granted, irrespective of formalities in pleading. The bill may be considered as one for the rescission of the stock purchase.Central Transportation Co. v. Pullman's Palace Car Co.,139 U.S. 24, 60; 35 L.Ed. 25, 60.
The defendant filed an answer denying generally all the allegations of the bill of complaint and, also, an answer in lieu of plea setting up the following defenses:
1. That the defendant is a public utility corporation organized under and existing by virtue of the laws of this state and as such has authority to issue its capital stock only upon *Page 350 
the approval of and in accordance with the regulations of the public utility commission; that complainant's stock was issued with such approval and without conditions.
2. That the alleged repurchase agreement was not for a legitimate corporate purpose and therefore void.
3. That the agreement creates a special preference in complainant as a preferred stockholder and is therefore void.
4. That it was unauthorized by either stockholders or directors.
5. That defendant had neither power nor authority in law to make such a contract.
6. That, not being in writing, it is void under the statute of frauds.
The facts disclosed at the final hearing were conclusive that the complainant's stock purchase was the result of high pressure salesmanship during an intensive stock selling campaign conducted by the defendant through its employes among its consumer-customers of which the complainant was one. There is no doubt but that the alleged representation or agreement of redemption was made by a duly authorized representative of the company and that it was false and fraudulent when made, as the defendant admits it never had any intention of redeeming or repurchasing complainant's stock and that it has refused to do so. At the conclusion of the hearing I announced that the proofs indicated that complainant was entitled to relief (Garrison v.Technic Electric Works, 55 N.J. Eq. 708; Zuckerman v. Geller,103 N.J. Eq. 145) unless the legal objections raised by defendant's answer in lieu of plea, which were reserved, prevailed. Briefs were accordingly submitted and have been carefully considered.
No reservation of the right to move to strike the bill is contained in the answer and no notice of such a motion was given; but, notwithstanding, the defendant's counsel, at the final hearing, moved to strike on the ground that the bill did not state an equitable cause of action and has argued the motion in his brief. The argument is that as the bill alleges the defendant's agreement of repurchase or redemption was made as an inducement to the complainant to purchase stock *Page 351 
in the defendant company, an illegitimate purpose is apparent on the face of the bill and, under Chapman v. Iron Clad RheostatCo., 62 N.J. Law 497, the alleged agreement is ultra vires and void. The argument is far-fetched and unsound and the motion to strike is denied. But all of the arguments advanced in support of the motion to strike are equally pertinent to the defenses set up in the answer in lieu of plea; and if of any force or efficacy will be given appropriate effect under those defenses.
Defenses 1, 2, 3 and 5, as set up in the answer in lieu of plea, may well be considered as together interposing the defense of ultra vires. The question first to be considered, therefore, is whether or not the defendant has the power to purchase its own stock.
The defendant company is the result of a merger of nine or more corporations, some organized under the General Corporation act and some under statutes applying only to corporations of a particular class, as public utility corporations. The agreement of merger is the charter of the defendant company and by article 11 (subsection b) thereof, the defendant has "power and authority * * * to acquire and hold and redispose of, in any lawful manner, its stock, bonds and other securities." Thus it would seem that the defendant has express authority in its charter to purchase its own stock.
But irrespective of charter provisions it is the settled law of this state that a corporation has implied power to purchase its own capital stock "provided, of course, no illegitimate design appears." Chapman v. Iron Clad Rheostat Co., supra. See, also, Berger v. United States Steel Corp., 63 N.J. Eq. 809,813; Oliver v. Rahway Ice Co., 64 N.J. Eq. 596; Beach v.Palisade Realty and Amusement Co., 86 N.J. Law 238;Knickerbocker Importation Co. v. State Board of Assessors,74 N.J. Law 583; Hoover Steel Ball Co. v. Schaefer Ball BearingsCo., 90 N.J. Eq. 164; 1 Cook on Corporations 849 § 311, and cases cited in footnote.
But assuming that there is neither express nor implied power in the defendant corporation to purchase its own stock, it seems to me that under the circumstances of this case the *Page 352 
defense of ultra vires is not available to the defendant.Amerman v. Wiles, 24 N.J. Eq. 13; Chapman v. Iron CladRheostat Co., supra; Camden and Atlantic Railroad Co. v. May'sLanding and Egg Harbor City Railroad Co. (Court of Errors andAppeals, 1886), 48 N.J. Law 530; Garrison v. Technic ElectricWorks, supra (at p. 718); Board of Education of the City ofMillville v. Empire State Surety Co., 83 N.J. Law 293; Earle
v. American Sugar Refining Co., 74 N.J. Eq. 751, 763; UnitedStates Industrial Alcohol Co. v. Distilling Company of America,89 N.J. Eq. 177; Mayor and Council of the Borough of Rutherford
(State) v. Hudson River Traction Co., 73 N.J. Law 227; Pom.Spec. Perf. (3d ed. 1926) 146 § 56. The authorities to the same effect in other jurisdictions are legion. See notes toMiller v. American Mutual Accident Insurance Co.,20 L.R.A. 765, and Central Transportation Co. v. Pullman's Palace CarCo., 35 L.Ed. (U.S.) 55.
"The defense is not allowed where it would defeat the ends of justice and work a legal wrong." Earle v. American SugarRefining Co., supra. And it is not available in a suit based upon fraud. State v. Morris and Essex Railroad Co.,23 N.J. Law 360; New York, Lake Erie and Western Railway Co. v. Haring,47 N.J. Law 137; Carr v. National Bank and Loan Company ofWatertown, 167 N.Y. 376; 60 N.E. Rep. 649; Garrison v. TechnicElectric Works, supra; 3 Fletch. Corp. § 1580; 14A C.J. 769 §§2831-2845.
The complainant has paid the full purchase price of $3,000 to the defendant for this stock and to sustain the defense of ultravires would be to allow the defendant to profit by its own wrong and this in face of the fact that complainant could have, in December, 1931, purchased a like amount of the same stock in the open market at twenty per cent. below par. The defendant has accepted all the benefits of its agreement and seeks to hide behind its alleged incapacity as a means of escape from its liability. But after receiving the fruits of its bargain, it is estopped to set up its own incapacity to make such a contract. The doctrine of estoppel is applied *Page 353 
in cases of this kind "for the purpose of compelling corporations to be honest, in the simplest and commonest sense of honesty."Bradley v. Ballard, 55 Ill. 413. The underlying principle is that a corporation cannot set up its own infirmity when it is unconscionable to do so. Rules of fair dealing apply alike to individuals and corporations. Louisville, N.A. and C. RailroadCo. v. Flanagan, 113 Ind. 488; 14A C.J. 775 ¶ 2845.
A case practically on all fours with the instant case is Vent
v. Duluth Coffee Spice Co., 64 Minn. 307; 67 N.W. Rep. 70, in which the Minnesota supreme court held that such a contract for the purchase of stock as that here involved amounted to a conditional sale and that an agreement of repurchase was notultra vires. "This provision of the contract constituted a material and substantial part of the consideration and inducement for the purchase of the stock * * *, and if the provision is void, it seems to us it vitiates the whole contract, and is a sufficient reason for the rescission of that contract and a return of the purchase price. * * *." See, also, Sweeney v.United Underwriters Co. (1912), 29 S. Dak. 576;137 N.W. Rep. 379; Morville v. American Tract Society, 123 Mass. 129;White v. Franklin Bank, 39 Mass. 181; Manchester and LawrenceRailroad Co. v. Concord, 66 N.H. 100; 20 Atl. Rep. 383;Bissell v. Michigan S. and N.I.R. Co., 22 N.Y. 258, 305; Tracy
v. Talmage, 14 N.Y. 162; McVity v. E.D. Albro Co.,86 N.Y. Supp. 144.
It is contended that the plea of ultra vires ought to prevail here because the defendant is a public utility corporation, citing McCarter v. Pitman, Glassboro and Clayton Gas Co.,74 N.J. Eq. 255. It was there held that "equity will not permit anultra vires act on the part of such a corporation [quasi-public] which will operate to impair its ability to properly discharge its public duties." But that is a matter which concerns the state alone. Earle v. Sugar Refining Co., supra.
And there is no evidence here that defendant's ability to discharge its public duties will be in the least impaired by redemption of complainant's stock. In fact, the proof is quite to the contrary. Nor should any different *Page 354 
standard of honesty and fair dealing be applied to a public utility corporation than to an ordinary corporation or to an individual. It is true that in Hoover Steel Ball Co. v.Schaeffer Ball Bearings Co., supra, it was held that a contract by a corporation to repurchase its stock, as a condition of the purchase of such stock, is unenforceable against the corporationif the effect of such enforcement be to prevent the payment ofcreditors in full. (Italics mine.) See, also, Oliver v.Rahway Ice Co., supra; Wolff v. Heidritter Lumber Co.,112 N.J. Eq. 34. But in the instant case the rights of creditors are not involved, as the defendant company is solvent, and the repurchase of complainant's stock will not render it insolvent.
Nor, assuming the contract to be illegal, as contended by defendant, are the parties in pari delicto and the rule ofEllicott v. Chamberlin, 38 N.J. Eq. 604, does not apply.Pom. Eq. Jur. 756 § 403; First National Bank v. Cornell,8 App. Div. (N.Y.) 427; 40 N.Y. Supp. 850; Tracy v. Talmage,supra.
The fourth defense set up in the answer in lieu of plea cannot avail the defendant. The bill alleges that defendant's agent was "duly authorized" and the proofs fully support it. The agreement of repurchase was within the scope of the agent's apparent authority as held out by the defendant and by its acceptance of the complainant's subscription after knowledge of the inducing representation, the defendant ratified the agent's acts.Garrison v. Technic Electric Works, supra, 14A C.J. 775 ¶2845.
The sixth defense advanced in the answer in lieu of plea is unavailing. To allow it would be to convert the statute of frauds into an instrument of fraud rather than one to prevent fraud.
It is also argued that, as the written subscription agreement for the stock contained no stipulation for repurchase or redemption, proof of such an oral contemporaneous agreement is inadmissible as violative of the parol evidence rule. But there is a difference between introducing parol evidence for the purpose of showing that the writing does not express the *Page 355 
true intention of the parties, and introducing it for the purpose of showing the circumstances which make it inequitable and unconscientious to permit the mere written words to control its operation. Stoutenburgh v. Tompkins, 9 N.J. Eq. 332. And "the truth is that the parol evidence rule has been applied or disregarded in courts of equity as the ends of justice required. Like all other legal rules, it is, in equity, no bar to justice."Giberson v. First National Bank of Spring Lake, 100 N.J. Eq. 502,508.
The complainant is entitled to a decree and it matters little whether it be in terms of specific performance, of rescission, or what not, so long as it affords the relief to which, under the proofs, he is entitled. *Page 356